**Nancy HON, Administratrix of the Estate of William Hon, Deceased, Plaintiff,**

v.

**STROH BREWERY CO., Defendant.**

**Civ. No. 85–1332.**

United States District Court, M.D. Pennsylvania.

Feb. 2, 1987.

Norman D. Namey, Maurice A. Cardone, Wilkes-Barre, Pa., Cardone, Touey & Namey, for plaintiff.

William F. Anzalone, Hourgian, Kluger, Spohrer, Quinn & Myers, Wilkes-Barre, Pa., Donald R. McGarrah, Wildman, Harrah, Allen & Dixon, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff, Nancy Hon, instituted this diversity action on September 12, 1985. Her husband, William Hon, died as a result of pancreatitis on September 12, 1983. Plaintiff alleges that her husband's consumption of alcoholic beverages—to wit, Old Milwaukee Beer and Old Milwaukee Light Beer—manufactured and distributed by defendant, Stroh Brewery Company, caused his death. Her Complaint contains counts based on the following theories: negligence, gross negligence, negligent misrepresentation, 402A strict products liability, 402B misrepresentation and breach of implied warranty. She also presents wrongful death and survival actions.

Plaintiff has not maintained that her husband was harmed by manufacturing or design defects in defendant's beer; rather, her action focuses upon alleged marketing defects, *i.e.*, defendant's failure to place a warning label on its products notifying consumers of alcohol-related dangers.

Discovery revealed that plaintiff's husband drank two to three cans of beer per evening, approximately four nights per week.[1] *See* Document 31 of the record at p. 1 and Document 35 at pp. 1–2. He consumed defendant's beverages at this rate for at least six years.[2] *See* Document 31 at p. 2.

There is no evidence in the record that plaintiff's husband was ever influenced by any advertisements for defendant's products. In fact, his motivation for purchasing defendant's beverages, other than his preference for their taste, is unknown. *Id.*

Defendant filed a Motion for Summary Judgment, a Brief in Support thereof and a Statement of Uncontested Facts on November 26, 1986. The brewery contends that it cannot be held liable to plaintiff because (1)

---

[1]. The record does not indicate the volume of beer contained in these cans. Moreover, while the majority of beer consumed by plaintiff's husband was brewed by defendant, the decedent may have drunk beer which was produced by other manufacturers. *See* Document 31 of the record at p. 2 and Document 35 at p. 2.

[2]. There are no facts in the record concerning Mr. Hon's consumption habits prior to December 1976 when he met plaintiff, so the full duration of his consumption period is undetermined. The above information, then, applies to the period from December 1976 until September 1983. *See* Document 44 at p. 6 n. 1.

its beer was not defective and (2) it was under no duty to warn of the obvious and known dangers associated with alcohol.

Plaintiff submitted a Brief in Opposition to defendant's dispositive motion on December 17, 1986. She argues that defendant had a duty to warn of lesser-known dangers associated with alcohol, *i.e.*, that a consumer who drinks beer in moderate amounts may eventually die from a pancreatic disease which was caused by ingestion of beer.[3] She submitted affidavits from two medical experts[4] in support of her claim. She also filed a Motion for Judgment on the Pleadings and a Brief in Support thereof on December 19, 1986.

Defendant submitted a Reply Memorandum in support of its summary judgment motion on December 30, 1986. After obtaining verbal approval from the court,

plaintiff filed a Sur Reply Memorandum on January 9, 1987. On that same date, defendant filed a Memorandum in Opposition to Plaintiff's Motion for Judgment on the Pleadings.

For the reasons set forth below, the court determines as a matter of law that defendant's beverages were not defective and that defendant was not under a duty to warn of the dangers cited by plaintiff. Therefore, summary judgment will be granted in favor of defendant.[5]

## ANALYSIS

Upon examining a motion for summary judgment, a district court must view all facts in the light most favorable to the party opposing the motion. *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402 (3d Cir.

---

3. Plaintiff maintains:

Specifically, the Plaintiff. alleges that the Defendant's products are defective in that they fail to carry or contain warnings of dangers and/or risks of harm associated with the use and consumption of its products; and further that the Defendant breached a duty to the Plaintiff's decedent to warn of dangers which were not apparent and not likely to be known by him but which were, or at least should have been, known to the Defendant as the producer of the product. Simply stated, it is the Plaintiff's contention that the Defendant's products, in addition to the dangers and risks of harm widely known, were possessed of dangers and risks of harm that were not, or could not reasonably be expected to be known by the decedent as a member of the consuming public. The Plaintiff alleges by and through this action that the Defendant's products contain latent risks of harm to its consumers and dangerous characteristics which are not apparent to consumers and dangerous to an extent beyond that which the ordinary consumer possessed of ordinary knowledge common to the community would be aware. It is common knowledge that long-term consumption of alcohol can cause addiction, and lead to physical as well as psychological affect (sic), and that over consumption can lead to poisoning and death—but it is not commonly understood that when an individual drinks responsibly and in moderate amounts, he runs the risk of suffering personal injury in ways that he or she is unlikely to anticipate. So while it may not be necessary to label alcoholic beverages as to commonly known and associated dangers and risks of harm that result when used over a lengthy period of time or in excess; it should be required that it be labeled as to dangers that are non-apparent

and not commonly appreciated and which medical science has identified.

In support of this theory, the Plaintiff would advance the arguments that the Defendant's products do in fact meet the requirements of Section 402A of the Restatement as to being in a defective condition unreasonably dangerous and that the consumer-oriented, "social-engineering" function played by the law and courts in the area of products liability, when coupled with this case's facts dictates that recovery be permitted.

*See* Document 35 at pp. 3–4.

It is apparent from the documents submitted by plaintiff that she classifies certain dangers associated with defendant's beer as "latent" because it is not widely known, in her view, (1) that moderate consumption of beer, although over a prolonged period, can cause injury and (2) that pancreatitis, as opposed to commonly-appreciated risks such as liver disease, is a potential effect of alcohol consumption.

Plaintiff has not submitted any sample warnings which would satisfy her concerns.

4. Harry B. Plotnick, Ph.D., J.D. and Jack Marks, M.D.

5. The court's decision renders moot plaintiff's Motion for Judgment on the Pleadings, filed on December 19, 1986, as well as defendant's Motion for Sanctions to preclude plaintiff's expert testimony at trial and its Motion to Compel answers to expert interrogatories which were filed on December 10, 1986 and October 31, 1986, respectively. In any event, plaintiff's dispositive motion, wherein she argues that defendant did not deny with sufficient specificity certain factual allegations and legal conclusions set forth in her Complaint, is without merit.

1981). If there exists a genuine issue as to any material fact, summary judgment must be denied. Fed.R.Civ.P. 56(c). When confronted with a summary judgment motion, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided ..., must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Failure to so respond renders summary judgment appropriate against the adverse party. *Id.* Against this background, the court will examine whether defendant's beer was defective.

The starting point for the court's analysis is Restatement (Second) of Torts § 402A which was adopted as authority in Pennsylvania in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). Section 402A states:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The key phrases in the above language are "defective" and "unreasonably dangerous." Restatement (Second) of Torts § 402A comment g indicates that a product is defective when it "is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, but which will be unreasonably dangerous to him."

█ Restatement (Second) of Torts § 402A comment i explains the "unreasonably dangerous" criterion as follows:

Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption.... The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.

The above language implies that products which are intended for human consumption are not unreasonably dangerous—and thus are not defective without warnings—even though they may, over a period of time, cause harm which results from commonly-appreciated risks associated with those products.

Restatement (Second) of Torts § 402A comment j discusses the attachment of warnings or directions to products as follows:

In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to

warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it.

But a seller is not required to warn with respect to products or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized. Again the dangers of alcoholic beverages are an example, as are also those of foods containing such substances as saturated fats, which may over a period of time have a deterious effect upon the human heart.

Dean Prosser reiterated this view when he observed that "where, as in the case of whiskey, the danger of . . . use is generally known, it seems clear that the product cannot be regarded as unreasonably unsafe merely because it is capable of doing harm." W. Prosser, *Law of Torts* 660 (4th ed. 1971).

■ No cases were presented to this court in which other courts required manufacturers of alcoholic beverages to place warnings on their products.[6] In contrast, there are numerous decisions wherein courts held as a matter of law that manufacturers of alcoholic beverages do not have any duty to warn of the dangers of excessive or prolonged consumption of alcohol. *See, e.g., Rohe v. Anheuser-Busch, Inc.,* No. C-2-82-161, slip op. (S.D. Ohio Apr. 15, 1983), *aff'd per curiam,* 732 F.2d 155 (6th Cir.1984) (summary judgment granted in favor of beer manufacturers and against pedestrian who was struck by drunken driver; beer which did not contain any adulterants was not unreasonably dangerous because it conformed to the reasonable expectations of consumers in regard to safety); *Maguire v. Pabst Brewing Co.,* 387 N.W.2d 565 (Iowa, May 21, 1986) (certified questions from district court answered in favor of brewer who was sued for injuries directly caused by intoxicated driver; it is not unreasonably dangerous to sell beer without warnings since risks of intoxication are sufficiently known to consumers at large and since it is not practical to expect brewers to devise adequate warnings for the particular tolerance of each consumer); *Desatnik v. Lem Motlow, Inc.,* No. 84 C.A. 104, slip op. (Ohio App.Ct. Jan. 9, 1986) [Available on WESTLAW, OH-CS database] (summary judgment granted against plaintiff whose decedent died as a result of acute alcohol poisoning; manufacturer of "Jack Daniel's" whiskey was not under a duty to warn of the danger of alcohol poisoning and death from over-consumption of its product); *Russell v. Bishop,* No. 88, slip op. (Tenn.App.Ct. Jan. 7, 1986) [Available on WESTLAW, TN-CS database] (summary judgment against plaintiffs injured by drunken driver; distiller not required to warn of long-recognized dangers of alcohol); and *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690 (Tenn.1984) (plaintiff's complaint dismissed; manufacturer and distributor of grain alcohol not required to warn minor who overdosed of widely-known risks of prolonged or excessive consumption of alcohol).[7]

6. The single exception to this statement is the decision of the Tennessee Court of Appeals which was overruled on appeal by the Tennessee Supreme Court. *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690 (Tenn.1984).

Plaintiff contends that the present action "does not fall within the paramaters of the existing law on this issue, both with regard to the allegations and the facts." *See* Document 35 at p. 6.

7. Plaintiff maintains that these cases are not applicable to her situation because they involve excessive consumption of alcohol on one occasion as opposed to prolonged consumption in moderate amounts. *See* Document 35 at pp. 7–10. The court understands this distinction but nonetheless views these cases as evidence of the continued validity and widespread acceptance of the comments following Restatement (Second) of Torts § 402A as well as the universal recognition of all potential dangers associated with alcohol.

In particular, this court is persuaded by the reasoning set forth in *Garrison v. Heublein, Inc.*, 673 F.2d 189 (7th Cir.1982) (applying Illinois law). There, the plaintiff sued the manufacturer and distributor of Smirnoff vodka, alleging that he suffered injuries as a result of drinking the defendant's vodka over a period of twenty years. Thus, the situation in *Garrison* is comparable to the present case in that both involve prolonged consumption of alcohol in contrast to excessive consumption on one occasion.

The plaintiff in *Garrison* asserted five theories of liability: negligence, willful and wanton conduct, products liability, fraud and false and misleading advertising. The factual basis for his lawsuit was the defendant's failure to warn of certain "propensities" of its product, *i.e.*, that alcohol may be dangerous to consumers' mental and physical health. The United States District Court for the Northern District of Illinois dismissed the complaint for failure to state a claim upon which relief could be granted. The district court rejected the premise that liquor poses latent dangers which consumers do not appreciate and held that the defendant had no duty to add to the flow of information about alcohol which was already reaching the general public.

In affirming the dismissal, the Court of Appeals for the Seventh Circuit stated:

[E]ven though there are dangers involved in the use of alcoholic beverages, because of the common knowledge of those dangers, the product cannot be regarded as unreasonably unsafe.... [T]he dangers of the use of alcohol are common knowledge to such an extent that the product cannot objectively be considered to be unreasonably dangerous.

673 F.2d at 192.

The above cases are consistent with Pennsylvania law which holds that liability cannot be imposed on manufacturers for failing to warn of product-related dangers which are or should have been known to the users of those products. *See, e.g.*, *Brown v. Caterpillar Tractor Co.*, 741 F.2d 656, 661 (3d Cir.1984) (applying Pennsylvania law); and *Fraust v. Swift and Co.*, 610 F.Supp. 711, 713 (W.D.Pa.1985) (applying Pennsylvania law).[8] For instance, in *Shark v. Daisy-Heddon, Inc.*, 498 Pa. 594, 450 A.2d 615 (1982), the plaintiff, the administratrix of the estate of a deceased minor, sued the manufacturer of an air rifle after the decedent was shot in the head by a fourteen-year-old boy during the course of an intended practical joke. The court ruled that the lethal propensity of air guns was or should have been known to the user, so that liability could not be imposed on the manufacturer for its failure to warn of that lethal propensity.[9]

In the present case, it is uncontroverted that plaintiff's husband drank beer for a period of at least six years. His consumption period, then, will be classified as "prolonged." Plaintiff's expert also stated in his affidavit that the decedent's pancreatitis resulted from "moderate consumption of alcohol for a prolonged period of time." *See* Plotnick affidavit at p. 2.

However, it is also evident that the public recognizes that prolonged consumption of beer can cause bodily harm. For example, plaintiff's expert stated, "Members of the public generally believe that the excessive and prolonged use of alcohol results in the development of disease.... Medical science has clearly established that liver,

---

**8.** "The question of obviousness [of product-related dangers] is an objective one, with the focus being on the fictional 'ordinary consumer.'" *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir.1984) (applying Pennsylvania law).

**9.** *But see Fraust v. Swift and Co.*, 610 F.Supp. 711 (W.D.Pa.1985) (Teitelbaum, C.J.). There, a sixteen-month-old child choked while eating Peter Pan Creamy Peanut Butter spread on bread and suffered severe brain damage. The court held that it could not "say as a matter of law

that the danger of a sixteen month old choking on a peanut butter sandwich is generally known and recognized so that admittedly good peanut butter, without warning of such a danger, is not unreasonably dangerous." *Id.* at 714. However, the court, citing Restatement (Second) of Torts § 402A comments i and j, distinguished between peanut butter and alcoholic beverages, noting that because the latter "present known dangers no warning is required." *Id.*

pancreatic, gastrointestinal, and neurological disease are the result of either excessive or prolonged consumption of alcoholic beverages." *Id.* at 2–3.

Plaintiff contends, nonetheless, that defendant's beer was unreasonably dangerous because there was no warning of lesser-known dangers of prolonged consumption, such as pancreatitis, as opposed to commonly-recognized risks, such as alcoholism and liver cirrhosis. *See* Document 35 at pp. 7–8, 10–11. This argument misconstrues the purpose of product warnings. As the affidavits of plaintiff's experts demonstrate, prolonged consumption of alcohol can cause a host of maladies in the human body and can affect nearly every internal organ. It is not necessary that consumers' knowledge approach that of physicians regarding the risks of alcoholic beverages. It is not necessary that consumers be aware of each type of malady to which prolonged consumption of alcohol makes them susceptible, nor is it necessary for them to know every organ which is endangered. What is important is that, prior to drinking alcoholic beverages, they possess at least a general understanding that alcohol can be hazardous to human health. As

noted above, the court has determined that such an understanding is common knowledge.[10]

Plaintiff also maintains that the public fails to realize that moderate consumption of alcohol, as distinguished from excessive ingestion, can cause physical injury.[11] As plaintiff's expert indicates, a number of non-constant factors, such as nutrition, influence each person's bodily reaction to the presence of alcohol. *See* Marks affidavit at p. 4. "No threshold of toxicity can be established with ethanol consumption," and even "small amounts of alcohol taken for a relatively brief period of time are occasionally lethal." *Id.* at 4–5. The court's major concern with plaintiff's approach is that it could impose an impractical burden on manufacturers of alcoholic beverages to devise warnings suitable for the particular tolerance of each consumer. *Accord Maguire v. Pabst Brewing Co., supra.*

The court, however, need not address the issue of varying tolerance levels because it is able to determine as a matter of law that plaintiff's husband knew or should have known that the amount of beer which he consumed was potentially lethal.[12] Although his rate of consumption may have

**10.** Defendant correctly observes, "In essence, plaintiff seems to be arguing that although defendant admittedly has no duty to warn that death [through liver cirrhosis, etc.] may result from the long-term consumption of alcohol, it somehow had a duty to warn that the long-term consumption of alcohol could cause an inflamed pancreas which, in some cases, could be fatal." *See* Document 44 at p. 4.

**11.** Specifically, plaintiff states:

The plaintiff is not, and would not lump together those risks of harm and dangers associated with the moderate consumption of alcohol along with those associated with the excessive use of alcohol. The Plaintiff would argue by the very definition, risks posed by different usages of a product cannot be treated as being one and the same: (sic) for purposes of treatment under the law. In essence, a basic tenant (sic) of the Plaintiff's arguments, ... is that there exists within the community as a "community standard" or attitude the idea that there is a "correct manner" and "incorrect manner" concerning the way that alcohol, especially beer, is to be consumed. The Plaintiff would argue that this community standard is evidence of the common body of knowledge held by the community regard-

ing alcohol consumption. The "correct manner" to consume such products would be to do so in the manner as the Plaintiff's decedent did in this case: in a responsible manner and in moderate amounts and in the manner for which it was intended. The "incorrect manner" of consuming these products would be to do so as any of the parties to the cases cited by the Defendant in its original brief had done; i.e., excessive use to the point of alcohol poisoning or intoxication and/or excessive, prolonged abuse such as to lead to alcoholism and permanent affect of behavior. It would seem absurd to treat injuries caused by the "correct usage" of the Defendant's products in the same manner at those caused by the "incorrect usage" of the Defendant's products....

*See* Document 46 at pp. 4–5.

**12.** As noted earlier in this Memorandum, plaintiff's husband drank two to three cans of beer per evening, approximately four nights per week, for at least six years. This means that the decedent had a weekly consumption rate of eight to twelve cans of beer, a yearly consumption rate of 416 to 624 cans of beer, and a total consumption amount of 2,496 to 3,744 cans of beer over this six-year period.

been moderate, the decedent's consumption period was not "brief" and his total intake was not "small"; rather, his consumption was both prolonged (in excess of six years) and continuous. It would serve no benefit to require manufacturers of alcoholic beverages to warn of the commonly-known dangers associated with the total amount of beer consumed by plaintiff's husband.

The court, then, will grant summary judgment in favor of defendant on plaintiff's strict products liability claims. In view of the foregoing discussion, the court further determines that defendant was under no duty to warn of risks associated with the prolonged consumption of beer and that defendant cannot be held liable to plaintiff on negligence principles. In addition, plaintiff's breach of warranty claims are unfounded. *See Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968) (elements for § 402A and breach of implied warranty actions are virtually identical).

The only remaining theory of liability is plaintiff's assertion of misrepresentations under Restatement (Second) § 402B. An indispensable element for liability under § 402B is "justifiable reliance." Comment j following § 402B explains the justifiable reliance requirement as follows:

> The rule here stated applies only where there is justifiable reliance upon the misrepresentation of the seller, and physical harm results because of such reliance, and because of the fact which is misrepresented. It does not apply where the misrepresentation is not known, or there is indifference to it, and it does not influence the purchase or subsequent conduct.

As previously noted in this Memorandum, there is no evidence in the record that plaintiff's husband was ever influenced by the advertisements in question which promoted defendant's beer. Summary judgment is mandated against a party who would bear the burden of proof at trial when that party, after adequate time for discovery and upon motion, fails to establish the potential existence of an element essential to his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–

53, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact since there is a complete failure of proof regarding an essential element of the nonmoving party's case. *Id.* at 2553. Therefore, summary judgment will be granted in favor of defendant on plaintiff's § 402B claim.

An appropriate Order will enter.