**HON, Nancy M., Administratrix of the Estate of William Hon, Deceased, Appellant,**

v.

**STROH BREWERY CO.**

No. 87–5155.

United States Court of Appeals, Third Circuit.

Argued Sept. 11, 1987.

Decided Dec. 21, 1987.

Rehearing and Rehearing En Banc Denied Feb. 9, 1988.

Maurice A. Cardone, Norman D. Namey (argued), Cardone, Touey & Namey, Wilkes–Barre, Pa., for appellant.

William F. Anzalone, Hourigan, Kluger, Spohrer & Quinn, P.C., Wilkes–Barre, Pa., Anne G. Kimball (argued), Donald R. McGarrah, Richard C. Palmer, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for appellee.

Before SLOVITER and STAPLETON, Circuit Judges, and BROTMAN, District Judge *.

**OPINION OF THE COURT**

STAPLETON, Circuit Judge.

In this product liability, diversity action, appellant Nancy Hon seeks recovery for the death of her husband, William. The district court entered summary judgment

---

* Honorable Stanley S. Brotman, United States District Judge for the District of New Jersey (Camden), sitting by designation.

for appellee Stroh Brewery Company (Stroh). *See Hon v. Stroh Brewery Co.,* 665 F.Supp. 1140 (M.D.Pa.1987). Because we find that triable issues of fact exist, we will reverse.

## I.

It is undisputed that William Hon died from pancreatitis at the age of 26. Prior to contracting this disease, Mr. Hon had been in excellent health. Mrs. Hon claims that her husband's pancreatitis resulted from his consumption of alcohol.

The record contains evidence of Mr. Hon's drinking habits only for the six years immediately preceding his death. During that time, according to the evidence tendered by Mrs. Hon, Mr. Hon's alcohol consumption consisted mainly of Old Milwaukee Beer and Old Milwaukee Light Beer, both of which are manufactured by Stroh. He may also have consumed other brands of beer from time to time and only occasionally drank hard liquor. Mr. Hon consumed beer at the rate of two to three cans per night on an average of four nights per week. Mr. Hon never gave a reason for preferring Old Milwaukee other than its taste. In particular, he never indicated that he was in any way influenced by Stroh's advertisements for its beer.

In response to Stroh's summary judgment motion, Mrs. Hon introduced an affidavit of Dr. Harry Plotnick, a toxicologist and pharmacologist.[1] In his affidavit, Dr. Plotnick expresses his opinion that Mr. Hon's drinking caused his pancreatitis.[2] Dr. Plotnick then goes on to state several other opinions, which may be summarized as follows: (1) the understanding shared by members of the public is that excessive *and* prolonged use of alcoholic beverages is likely to result in disease, principally of the liver; (2) Mr. Hon's case was not within the risk thus appreciated by the public both because (a) his use was prolonged but not excessive and (b) his disease was of the pancreas; and (3) the public's understanding is "archaic" because medical science has now established that *either* excessive *or* prolonged, even though moderate, use of alcohol may result in diseases of many kinds, including pancreatic disease.

Mrs. Hon also filed an affidavit of Dr. Jack Marks, a medical doctor, which states that "small amounts of alcohol taken for a relatively brief period of time are occasionally lethal." Dr. Marks relies in part on medical literature reporting that "no threshold of toxicity can be established with ethanol consumption." App. at 188a–189a.

Finally, Mrs. Hon tendered television advertising boards showing commercials that have been aired to promote Old Milwaukee beer. *See* App. at 173a–184a. Mrs. Hon offered these advertising boards to show

---

1. Dr. Plotnick is a registered pharmacist with a Ph.D. in toxicology. Since 1977, he has been engaged in the private practice of law in a general civil practice. Since Stroh did not challenge Dr. Plotnick's expertise for purposes of the motion for summary judgment, we assume *arguendo* that he is an expert qualified to testify on all of the matters set forth in his affidavit.

2. In pertinent part Dr. Plotnick's affidavit states: Based on my review of these records, it is my professional opinion, based upon a reasonable degree of scientific certainty, that the death of William Hon from pancreatitis, complicated with hepatic disease and gastric ulcerations, was the direct result of the ingestion by the decedent of alcohol-containing beverages over a prolonged period of time. The patient history data contained in the medical records reviewed suggests that Mr. Hon's consumption of alcoholic beverages would be considered moderate. It is this moderate consumption of alcohol for a prolonged period of time which resulted in the alcoholic pancreatitis to which Mr. Hon succumbed.

Members of the public generally believe that the excessive and prolonged use of alcohol results in the development of disease. In my experience, laymen consider liver disease to be the principal or sole malady associated with such excessive and prolonged use of alcoholic beverages. Such is not the case, however, as clearly demonstrated by the case of Mr. Hon. His use of alcohol appears to have been prolonged, but was not, in my view, excessive. Additionally, Mr. Hon died as a result of pancreatitis, not hepatic disease. The general public's concept of alcohol-related disease is archaic. Medical science has clearly established that liver, pancreatic, gastrointestinal, and neurological disease are the result of either excessive or prolonged consumption of alcoholic beverages. App. at 195a–196a.

that Stroh has attempted to cultivate a belief among the consuming public that moderate consumption of its product is safe.

## II.

We exercise plenary review over grants of summary judgment motions to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could find for the party opposing the motion. *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir.1987). We must view all facts in a light most favorable to the party opposing the motion. *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 404 (3d Cir.1981).

The law of Pennsylvania applies to this diversity case. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Since no Pennsylvania or Third Circuit case specifically addresses the liability of an alcoholic beverage manufacturer to a Pennsylvania consumer who dies as the result of consuming its product, we are required by controlling precedent to predict how the Supreme Court of Pennsylvania would decide the issues before us. *E.g., McGowan v. Univ. of Scranton*, 759 F.2d 287, 291 (3d Cir.1985). In performing such a task, we accept decisions of Pennsylvania's intermediate courts as presumptive evidence of Pennsylvania law. *McGowan, supra; Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273–74 (3d Cir.1985); *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 n. 3 (3d Cir.1985).

We start with the proposition that Pennsylvania has adopted Restatement (Second) of Torts § 402A. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). Under § 402A(1),

[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm thereby caused to the ultimate user or consumer, ... if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

In applying this Restatement rule, the Supreme Court of Pennsylvania has held that the trial judge must decide a threshold issue as a matter of law: taking the allegations of the complaint to be true, would the social policy considerations underlying strict liability justify recovery under § 402A in this case. *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978). The court must thus balance the product's social utility against its unavoidable risks to determine whether the condition of the product could be labeled "unreasonably dangerous" and the risk of loss placed on the manufacturer. Only if the court decides that strict liability would be appropriate does the case go to the jury for a determination regarding the truth of the plaintiff's allegations. *See* 391 A.2d at 1025–27. The jury is not introduced to the concept of "unreasonably dangerous" so that notions from the law of negligence will not creep into its deliberations. *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 899–900 (1975) (plurality opinion); *Holloway v. J.B. Sys., Ltd.*, 609 F.2d 1069, 1073 (3d Cir.1979) (per curiam) (applying Pennsylvania law).

In Pennsylvania, a plaintiff asserting a strict liability claim against a manufacturer of a product must show that: (1) the product was in a defective condition when it left the hands of the manufacturer; and (2) the defect was a proximate cause of the plaintiff's injury. *See Berkebile*, 337 A.2d at 898; *Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 99 (3d Cir. 1982) (applying Pennsylvania law); *Foley v. Clark Equip. Co.*, 523 A.2d 379, 382 (Pa.Super.1987). Since Stroh did not move for summary judgment on the ground that there was no material dispute of fact with respect to the second element of Mrs.

Hon's claim, we will focus only on the concept of "defective condition."[3]

A product can be in a defective condition not only when something has gone awry in the manufacturing or distribution process or when the product's design is flawed, but also when a warning or instruction needed to make the product safe for its intended purpose is missing. As the Supreme Court of Pennsylvania has explained:

> A "defective condition" is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use. One such element may be warnings and/or instructions concerning use of the product. A seller must give such warning and instructions as are required to inform the user or consumer of the possible risks and inherent limitations of his product. Restatement (Second) of Torts § 402A, comment h. If the product is defective absent such warnings, and the defect is a proximate cause of the plaintiff's injury, the seller is strictly liable without proof of negligence.

*Berkebile,* 462 Pa. at 100, 337 A.2d at 902 (plurality opinion); *see also Incollingo v. Ewing,* 444 Pa. 263, 287, 282 A.2d 206, 219 (1971); *Conti v. Ford Motor Co.,* 743 F.2d 195, 197 (3d Cir.1984) (applying Pennsylvania law), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 784 (1985); Restatement (Second) of Torts § 402A comments h, j.

As one would expect, a manufacturer whose products will enter Pennsylvania may assume that users or consumers will possess the common knowledge of the community. It must therefore warn only of *latent* risks. *Overpeck v. Chicago Pneumatic Tool Co.,* 823 F.2d 751, 754 (3d Cir. 1987) (applying Pennsylvania law); *Conti v. Ford Motor Co., supra.* If the product's risks "w[ere] known or should have been known to the user, liability cannot be imposed upon the manufacturer merely because the manufacturer allegedly has failed to warn of that propensity." *Sherk v. Daisy–Heddon, Div. of Victor Comp-*

*tometer Corp.,* 498 Pa. 594, 450 A.2d 615, 618 (1982) (plurality opinion); *see also Brown v. Caterpillar Tractor Co.,* 741 F.2d 656, 661 (3d Cir.1984) (applying Pennsylvania law) (same); Restatement (Second) of Torts § 402A comment i ("The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as its characteristics.").

Based on these principles, we now turn to the task of predicting how the Pennsylvania Supreme Court would decide the issues before us. As President Judge Spaeth of the Pennsylvania Superior Court has insightfully explained, warning cases rarely present a problem with respect to the threshold "social policy" issue:

> Courts and commentators have identified various factors that a court should consider when making the social policy decision required by *Azzarello....* Sometimes, no doubt, it will be difficult for a court to decide whether as a matter of social policy a jury should be permitted to impose strict liability. However, where inadequate warnings are alleged, the social policy decision is relatively simple. As has been said, "In the case of an inadequate warning, ... imposing the requirements of a proper warning will seldom detract from the utility of the product." *Freund v. Cellofilm Properties, Inc.,* 87 N.J. 229, 238 n. 1, 432 A.2d 925, 930 n. 1 (1981). At the same time, the cost of adding a warning, or of making an inadequate warning adequate, will at least in most cases be outweighed by the risk of harm if there is no adequate warning.

*Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 485 A.2d 408, 423 (1984) (en banc) (footnote omitted), *appeal dismissed,* 508 Pa. 643, 500 A.2d 428 (1985).

Although the district court in this case did not expressly undertake the threshold social policy analysis required by *Azzarel-*

---

**3.** Stroh maintained in its brief and at oral argument that Mrs. Hon has not come forward with sufficient evidence of proximate causation to withstand a summary judgment motion. Be- cause Stroh failed to raise this issue before the district court, we express no opinion on it. Stroh is, of course, free to renew its contentions on remand.

*lo*, it did suggest that allowing strict liability in this case "could impose an impractical burden on manufacturers of alcoholic beverages to devise warnings suitable for the particular tolerance of each consumer," 665 F.Supp. at 1146. Mrs. Hon does not take issue with this suggestion. Rather, she insists that a general warning of the risk of moderate consumption would suffice, for example, "Alcohol can have adverse effects on your health even when consumed in moderate amounts." If Stroh shows that it is not feasible for it to give an effective warning of the hazard that led to Mr. Hon's death, this case might present a more substantial social policy issue than the typical warning case referred to by Judge Spaeth. We do not resolve that issue here because the district court did not fully address it and because we believe the issue would benefit from a more complete development of the record. *See Fravel v. Suzuki Motor Co.*, 337 Pa.Super. 97, 486 A.2d 498, 502 n. 3 (1984) (holding that the trial court's dismissal of plaintiff's complaint alleging failure to warn of a motorcycle's dangers was premature, and remanding for fuller factual development before a determination of whether strict liability rule could appropriately be applied).

The remaining issue under the analysis taught in the Pennsylvania cases is whether, given the common knowledge of the community with respect to the hazards of alcohol consumption, a warning was an "element necessary to make [Stroh's beer] safe for its intended use," namely human consumption. *Azzarello*, 391 A.2d at 1027. This issue is for the jury unless the record created in response to Stroh's motion for summary judgment reveals no factual basis for an affirmative answer to this crucial question. *E.g., Dion v. Graduate Hosp. of Univ. of Pa.*, 360 Pa.Super. 416, 520 A.2d 876, 880 (1987) (jury must be instructed to consider "whether the product was safe in the absence of warnings or in light of the warnings that were given"). *Dambacher*, 485 A.2d at 429–30 (Spaeth, J.) (suggesting

that the jury be instructed, "If you find that when the product left the supplier's control, it lacked the warnings necessary to make it safe for its intended use, then the product was defective, and the supplier is liable for all harm caused by the defect").

The district court granted summary judgment to Stroh because it concluded "as a matter of law that [Mr. Hon] knew or should have known that the amount of beer that he consumed was potentially lethal." 665 F.Supp. at 1146. It erred in reaching this conclusion. On the record before the district court, a trier of fact could properly find that while the amount of beer consumed by Mr. Hon was potentially lethal, that fact was known neither to him nor to the consuming public. For this reason, we conclude that there is a material dispute of fact as to whether Stroh's beer without a warning is safe for its intended purpose and, accordingly, that summary judgment was inappropriate.

Dr. Marks' and Dr. Plotnick's affidavits provide evidence tending to show that beer in the quantity and manner Mr. Hon consumed it can have fatal consequences. Nothing in the record suggests that Mr. Hon was aware of this fact, however. Moreover, Dr. Plotnick's affidavit tends to show that the general public is unaware that consumption at this level and in this manner can have any serious adverse effects. There is no evidence in the record that the public appreciates any hazard that may be associated with this kind of consumption.

In addition, we conclude that the story boards of Stroh's commercials provide additional evidence from which a jury could conclude that the general public is unaware of the hazard that allegedly led to Mr. Hon's death.[4] If a jury finds that Stroh's marketing of its product has effectively taught the consuming public that consumption of beer on the order of eight to twelve cans of beer per week can be a part of the "good life" and is properly associated with

---

**4.** Stroh maintains that its advertisements are irrelevant in this case because there is no evidence that Mr. Hon relied on these advertisements. We disagree. Where the duty to warn

is at issue, the appropriate standard looks to the effect of warnings or nullifying advertisements on the general public, as well as on the individual plaintiff.

healthy, robust activities, this conclusion would be an important consideration for the jury in determining whether an express warning was necessary to make Old Milwaukee beer safe for its intended purpose. *Cf. Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807, 810 (1984) (jury may consider whether a manufacturer has nullified warning that has been given by its promotion of the product); *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206, 220 (1971) ("Action designed to stimulate the use of a potentially dangerous product must be considered in testing the adequacy of a warning as to when and how the product should *not* be used...."). Based on this evidence we believe there is a material dispute of fact as to whether the sale of Stroh's beer products with no warning was safe for its intended purpose.

Stroh's primary argument in response to the evidence presented by Mrs. Hon is that under comment j of § 402A, all that is required to preclude liability is that the consumption of alcohol be "prolonged."[5] We decline to read comment j so narrowly. Comment j, which specifically cites alcohol as an example, states that no warning is needed for products that are made dangerous only "when consumed in excessive quantity, or over a long period of time, *when the danger, or potentiality of danger is generally known and recognized."* Restatement § 402A comment j (emphasis added).

Stroh interprets comment j to mean that "the dangers of the prolonged consumption of alcohol are well known to the public." Appellee's Brief at 20. But comment j does not say that whenever alcohol is consumed over a long period of time the dangers are necessarily generally known. Rather, it says that *when* the danger is generally known, no warning is required. Alcohol is an example of this rule because many of the dangers of alcohol abuse are known, whether this abuse occurs at a single sitting or over an extended period of time. But nothing in comment j suggests that the consumption of alcohol for any extended period, no matter how short, in any quantity, no matter how small, presents generally known dangers. Read in the context of the entire text quoted in the margin, comment j does nothing more than extend to the duty to warn the Restatement's general exception for cases in which the consumer knows or should know of the product's dangerous propensities. *See Brown,* 741 F.2d at 661 (3d Cir.1984) (citing comment j and stating that there is no liability if the danger is or should have been known to the user); Restatement (Second) of Torts § 402A comment i.[6]

---

5. Comment j states in relevant part:

   *j. Directions or warning.* In order to prevent the product from being [in a defective condition] unreasonably dangerous [to the user or consumer], the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required. But a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized. Again the dangers of alcoholic beverages are an example, as are also those of foods containing such substances as saturated fats, which may over a period of time have a deleterious effect upon the human heart.

6. In pertinent part, comment i states:

   Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption.... The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics....
   Restatement (Second) of Torts § 402A comment i. Thus, although like comment j, comment i

Thus, comment j does not preclude liability for prolonged alcohol consumption absent a determination that the quantity of alcohol consumed was sufficiently large and the period of use was sufficiently long to present dangers that are generally known.

Our reading of comment j as applied to alcohol is consistent with the Pennsylvania courts' treatment of duty to warn cases involving other drugs. Under the Pennsylvania cases, a drug manufacturer has no duty to warn of hazards about which the user is or should be aware. At the same time, when there are hazards of which the user has no reason to have knowledge, a drug manufacturer must provide those warnings and instructions necessary to make it safe for human consumption. *See Incollingo,* 282 A.2d at 219–20; *Stanton by Brooks v. Astra Pharmaceutical Prods., Inc.,* 718 F.2d 553, 570–71 (3d Cir. 1983). As Dr. Plotnick's affidavit notes, alcohol is a drug that, as a depressant of the central nervous system, has certain therapeutic and certain adverse effects. We perceive no basis for predicting that the courts of Pennsylvania will treat alcohol any differently than they treat other drugs.

With one possible exception,[7] all of the cases cited by Stroh presented records from which a trier of fact could conclude only that the consumer of the alcoholic beverages knew or should have known that his or her consumption created a substantial risk of bodily injury.[8] Accordingly, these cases are entirely consistent with Mrs. Hon's theory of liability. For example, in *Rohe v. Anheuser Busch, Inc.,* No. C–2–82–161, slip op. at 8–9 (S.D.Ohio Apr. 15, 1983), *aff'd per curiam,* 732 F.2d 155 (6th Cir.1984), the court held that

> the ordinary everyday consumer surely understands that over-consumption of beer may have harmful, and even disastrous effects. *In particular, the ordinary consumer understands that drinking excessive amounts of beer may impair the motor skills and the judgment necessary to drive an automobile. Furthermore, the intended use of beer is for consumption by adults in moderate amounts.... Beer like that which [the drunk driver] abused is safely consumed in reasonable quantities by the public.*

*Id.* at 8–9 (emphasis added); *see also Maguire v. Pabst Brewing Co.,* 387 N.W.2d 565 (Iowa 1986) (injury caused by drunk driver); *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690 (Tenn.1984) (death caused by single overdose of grain

cites alcohol as an example, the exception to liability applies only because the dangers of intoxication and alcoholism are within the contemplation of the ordinary consumer.

7. The one case in which the opinion reveals no direct evidence of excessive use is *Garrison v. Heublein, Inc.,* 673 F.2d 189 (7th Cir.1982). In *Garrison,* the plaintiff sued a vodka manufacturer alleging injuries suffered as a result of drinking vodka over a twenty year period. The plaintiff alleged that the defendant was liable under § 402A because it did not warn of the "propensities" of vodka

> "to cause physical damage to the consumer;" "to cause impairment to physical and motor skills for a period of time after consumption;" "to cause impairment to mental capacity and facilities for a period of time after consumption;" to affect the personality of the consumer; to be addictive; and to create dangers in the operation of a motor vehicle.

*Id.* at 189 n. 2. The court held that under Illinois law a manufacturer "does not have a duty to warn of the common 'propensities of alcohol.'" *Id.* at 192. Except for the first "propensity," the plaintiff's list of dangers all involve the excessive use of vodka. Thus, despite the absence in the opinion of any explicit mention of excessive use by the plaintiff, one can reasonably infer that the plaintiff's consumption of vodka for twenty years was also excessive. In this context, the court's conclusion that these dangers are common knowledge, *id.* at 192, is not surprising. It is hard to conclude, however, that *Garrison* decides that "*any* injury caused by the prolonged consumption of alcoholic beverages is 'common knowledge.'" Appellee's Brief at 21 (emphasis added).

8. We do not suggest that the consumer must be aware of the particular etiology by which the risk is created. It is sufficient if he or she knows or should know that his or her conduct creates a substantial risk of bodily injury. With respect to Dr. Plotnick's conclusion that the public is not generally aware of the relationship between alcohol consumption and pancreatitis, the district court correctly holds that "[i]t is not necessary that consumers be aware of each type of malady to which prolonged consumption of alcohol makes them susceptible, nor is it necessary for them to know every organ which is endangered." 665 F.Supp. at 1146.

alcohol); *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 583 (Tex.Ct.App.1987) ("The ordinary consumer in today's society, with the ordinary knowledge common to the community as to the characteristics of the product, knows of the dangers of driving while intoxicated"); *Desatnik v. Lem Motlow, Inc.*, No. 84 C.A. 104 (Ohio Ct.App. Jan. 9, 1986) [Available on WESTLAW, 1986 WL 760] (death caused by single overdose of alcohol); *Russell v. Bishop*, No. 88 (Tenn.Ct.App. Jan. 7, 1986), [Available on WESTLAW, 1986 WL 653] *appeal denied*, (Tenn. Apr. 28, 1986) (death caused by accident involving intoxicated driver); *Malek v. Miller Brewing Co.*, No. 85-6-3420 (Tex. Dist.Ct. Jan. 6, 1987) (intoxicated driver). The district court in this case stated that it "understands this distinction but nonetheless views these cases as evidence of ... the universal recognition of *all* potential dangers associated with alcohol." 665 F.Supp. at 1144 n. 7 (emphasis added). As we read these cases, they do not support such a broad proposition.

It is true, as Stroh stresses, that Mrs. Hon cites no case holding a brewer strictly liable for a failure to warn. We find this fact neither surprising nor at odds with our analysis, however. So far as we have been able to ascertain, there is no case in which the plaintiff allegedly consumed beer in the quantity and manner reflected in this record. The fact that such a case has not been litigated is explainable on either of two grounds. It may be, as Mrs. Hon contends, that consumers are unaware of the risk created by the consumption of beer in this manner. On the other hand, it may be, as Stroh's answer indicates it will attempt to prove, that Mr. Hon's quantity and manner of beer consumption poses no significant risk of bodily injury. In this context, the absence of authority for Mrs. Hon's position provides no persuasive rea-son to depart from the analysis suggested by the Pennsylvania authorities we have discussed above.[9]

### III.

We will vacate the summary judgment granted to Stroh and remand the case to the district court for further proceedings consistent with this opinion.

**9.** Stroh does not contend that it is protected from strict liability by its compliance with the federal laws pertaining to the labeling or advertising of malt beverages. *E.g.*, 27 U.S.C. §§ 205(e), (f); 27 C.F.R. §§ 7.20–7.29, 7.50–7.55 (1987). *Compare Abernathy v. Schenley Indus., Inc.*, 556 F.2d 242 (4th Cir.1977) (per curiam) (holding that the failure of a distiller and seller of whiskey to warn of the hazards of alcohol poisoning did not violate federal statutes), *cert. denied*, 436 U.S. 927, 98 S.Ct. 2822, 56 L.Ed.2d 770 (1978). Accordingly, we have no occasion to address such a contention. *Compare Cipollone v. Liggett Group, Inc.*, 789 F.2d 181 (3d Cir.1986) (discussing the effect of compliance with federal law regarding cigarette labeling); *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir.1987) (same).