Sharon V. CHILDERS, Administratrix of the Estate of Willard Edgar Childers, Deceased, Appellant,

v.

Kenneth W. JOSEPH, t/d/b/a Sunrise Equipment and Supply Company; Sunrise Equipment and Supply Company; Ohio Edison, a corporation; General Motors Corporation; Pitman Manufacturing Company; A.B. Chance Company; Emerson Electric Company, a corporation; Toombs Truck and Equipment Company; Hugh L. Strickland, Inc., Appellees,

v.

POWER LINE EQUIPMENT RENTALS, INC., Sandra L. Simpson, t/a E & S Service & Repair, and Howard P. Foley Co., Third–Party Defendants.

No. 87–3264.

United States Court of Appeals, Third Circuit.

Argued Dec. 14, 1987.

Decided March 22, 1988.

Francis J. Carey (argued), Balzarini, Carey & Watson, Pittsburgh, Pa., for appellant.

Richard J. Federowicz (argued), Weis & Weis, Pittsburgh, Pa., for appellee Ohio Edison.

Carl A. Eck, Louis C. Long (argued), Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., B. Lynn Enderby and Judith A. Zakens, Office of General Counsel, General Motors Corp., Detroit, Mich., for appellee General Motors Corp.

C. Richter Taylor, Jr. (argued), Wendelynne J. Newton, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for appellees Pitman Mfg. Co., A.B. Chance Co., Emerson Elec. Co. and Toombs Truck and Equipment Co.

Arthur J. Murphy, Jr., Lawrence G. Paladin, Jr., Murphy, Taylor & Adams, P.C., Pittsburgh, Pa., for appellee Hugh L. Strickland, Inc.

Frederick N. Egler, Jr. (argued), Linda Law Carroll, Egler, Anstandig, Garrett & Riley, Pittsburgh, Pa., for third-party defendant Power Line Equipment Rentals, Inc.

Before SLOVITER and COWEN, Circuit Judges, and DEBEVOISE, District Judge [*].

## OPINION OF THE COURT

COWEN, Circuit Judge.

This is a complex, multi-defendant products liability and negligence case in which the plaintiff alleges that Willard Childers, her deceased husband, was killed as a result of defects in the digger/derrick truck he was operating at the time of his death. We will affirm the district judge's order dismissing plaintiff's negligence claim against defendant Ohio Edison by way of summary judgment, because we believe

[*] The Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation.

that the plaintiff did not set forth evidence of record sufficient to establish that claim against that defendant. However, because the district judge erred in ruling that in certain respects the digger/derrick truck was not "unreasonably dangerous" under Pennsylvania products liability law, and erred in dismissing products liability claims against defendants Hugh L. Strickland, Inc. and Toombs Truck and Equipment Co., we will remand this case to the district court for a new trial against the remaining defendants.

## I.

This case arises from the accidental death of Willard Childers. Childers was employed by the Howard P. Foley Company ("Foley"), an electrical contractor, and was engaged in the task of unloading wooden utility poles from a flat bed trailer at the time of the accident. Childers was killed when the digger/derrick truck he was operating from a rear operators' station moved backward, crushing him between the truck and the flat bed trailer from which he was removing utility poles. Sharon Childers, his widow and administratrix of his estate, brought products liability claims against a number of defendants who had participated in the manufacture, sale or distribution of the digger/derrick truck, or some part of the truck, and negligence claims against defendant Ohio Edison, which had owned and operated the truck for eleven years.

The digger/derrick truck was manufactured and sold in two parts: a truck cab and chassis, and the digger/derrick unit which was attached to the cab and chassis base. The cab and chassis, a 1970 Chevrolet Model C–60, was manufactured by defendant General Motors Corporation ("General Motors"), and sold by defendant Hugh L. Strickland, Inc. ("Strickland"), a General Motors dealer. The digger/derrick unit, a Pitman Polecat, was manufactured by defendant Pitman Manufacturing Company,[1]

("Pitman") and sold by Toombs Truck and Equipment Company ("Toombs"), a Pitman dealer.

Ohio Edison purchased the digger/derrick truck from the defendant dealers, requesting that it be built to particular specifications. Relevant here is that Ohio Edison specified that the truck not be equipped with a back-up alarm. Ohio Edison used the truck for eleven years, and sold it to defendant Kenneth Joseph (t/d/b/a Sunrise Equipment and Supply Company), who specialized in the reconstruction of this type of equipment. Joseph, after rebuilding the digger/derrick truck, sold it to third party defendant Power Line Equipment Company ("Power Line"). Power Line then leased the truck to the deceased's employer, the third-party defendant Howard P. Foley Company.

Childers initially instituted separate actions in the United States District Court for the District of Ohio, and in the United States District Court for the District of Western Pennsylvania. She brought the Ohio action against defendant Ohio Edison, alleging that Ohio Edison had been negligent in formulating specifications when ordering the digger/derrick truck, and in failing to provide appropriate warnings to the subsequent purchasers. She sued the remaining defendants in the Western District of Pennsylvania, asserting product liability claims. Childers alleged that the digger/derrick truck was defective because (1) it lacked a back-up alarm; (2) the rear remote throttle/operator station, which the decedent was using at the time of the accident, was improperly located; (3) the truck lacked an interlock which would prevent operation in gear from the rear remote station; (4) the truck had inadequate brakes; and (5) the transmission and gear selector was defective.

Each defendant filed cross-claims against the other defendants for contribution and indemnity, and defendant Pitman also filed

---

**1.** Pitman Manufacturing Company is a division of the A.B. Chance Company, which was owned by the Emerson Electric company on the date of the accident. Although all three are named as defendants in this case, we refer to this defendant as the "Pitman Manufacturing Company" or "Pitman" in this opinion.

a third-party complaint against the Power Line Equipment Company.[2]

The two cases were consolidated in the United States District Court for the Western District of Pennsylvania. Before discovery was completed, Ohio Edison moved for summary judgment. *See* section II, *infra*. The district court, after considering briefs and affidavits filed by Ohio Edison, a brief submitted by the plaintiff, and oral argument, granted Ohio Edison's motion.

The district court also dismissed Childers' claims against defendants Hugh L. Strickland, Inc. and Toombs Truck and Equipment Company upon oral motion at a pre-trial conference. These motions were not briefed, and were solicited by the district court at the time of the conference, although similar motions had been filed earlier in the case by these defendants.

During the trial, the district judge, upon motions of the remaining defendants, ruled that evidence regarding the alleged brake defect, lack of a back-up alarm, and the alleged improper placement of the rear operator station would not be admissible. These issues were not submitted to the jury. Additionally, the district court granted third-party defendant Power Line's motion for a directed verdict at the end of its case.

The jury thus considered only two of the defects alleged by Childers—the lack of an interlock device, and the alleged defects in the transmission and gear selector—against defendants General Motors, Pitman, and Joseph. The jury returned a verdict in favor of the defendants. Childers appeals the above evidentiary rulings of the district court, and also asserts that the jury charge was defective.

## II.

■ The first district court ruling appealed from is the grant of summary judgment in favor of Ohio Edison. Childers primarily argues on this appeal that the trial judge improperly found there to be no genuine issue of material fact.[3] Our review of this ruling is plenary. *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 142 (3d Cir.1987).

Summary judgment is granted only when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). An issue is "genuine" only if a reasonable jury, considering the

---

**2.** Pitman's third-party complaint also named as third-party defendants Sandra L. Simpson (t/d/b/a E & S Service and Repair), E & S Service and Repair ("E & S"), and the Howard P. Foley Company. The district court dismissed claims against Simpson and E & S by way of summary judgment, and proceedings against the Howard P. Foley Company were stayed under the bankruptcy code. Because no party to this appeal has contended that the case against these third-party defendants remains viable, we do not address them further in this opinion.

**3.** Childers alludes to an argument, which she has not directly presented to this Court, that the district judge improperly considered Ohio Edison's motion for summary judgment before discovery in this case had been completed. Ohio Edison's motion was heard on August 15, 1985, while discovery in this case continued until September 1, 1985.

Fed.R.Civ.P. 56(f) permits a nonmoving party to show that it "cannot for reasons stated present by affidavit facts essential to justify the party's opposition...." In the face of such a showing, the district court "may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or

may make such other order as is just." *Id.* We have noted that this rule "affords the district court a measure of discretion in determining whether the summary judgment motion is ripe for resolution." *Sames v. Gable*, 732 F.2d 49, 51 (3d Cir.1984) (citations omitted). Although in *Sames* we found that the district judge had considered a summary judgment motion prematurely where the moving party had not yet answered interrogatories served on him and the district court granted the movant summary judgment without a hearing, such conditions are not present in this case. Only two weeks of discovery remained at the time of Ohio Edison's motion, and Childers did not seek to conduct additional discovery against Ohio Edison. Indeed, Childers did not argue that she needed additional time to seek particular discovery, or that particular facts might be forthcoming were she permitted to conduct additional discovery. Moreover, Childers was given an opportunity to present her misgivings at oral argument, at which time she argued the merits of the motion, and did not mention that additional discovery might be necessary.

Given these circumstances, we cannot say that the district judge abused his discretion in hearing Ohio Edison's motion for summary judgment with two weeks of discovery remaining.

evidence presented, could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under the Supreme Court's 1986 decision in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the party moving for summary judgment has the initial burden of identifying evidence which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. "However, where the non-moving party bears the burden of proof, it must by affidavits or by the depositions and admissions on file 'make a showing sufficient to establish the existence of [every] element essential to that party's case.'" *Equimark*, 812 F.2d at 144 (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552–53).

■ Childers sued Ohio Edison under a negligence theory; because Ohio Edison did not manufacture or market the digger/derrick truck, she could not allege that Ohio Edison was strictly liable under a products liability theory. Instead, Childers asserted that Ohio Edison was negligent in ordering the truck without a backup alarm, in not installing a safety interlock device, and in not warning subsequent users and purchasers of these conditions.[4]

■ Ohio Edison, when moving for summary judgment, pointed to affidavits and depositions of record which supported its position that its decision to order the digger/derrick truck without a backup alarm was reasonable, and did not violate any duty of care it owed the plaintiff. Specifically, Ohio Edison pointed to deposition testimony of expert and other witnesses which indicated that its decision to order the truck without a backup alarm was consistent with industry safety practices and OSHA regulations. Ohio Edison also pointed to affidavits and depositions which indicated that the truck, as manufactured by General Motors and Pitman, was not equipped with an interlock. It argued that

it, as a purchaser of a manufactured product, could not be expected to install such a safety device. Finally, Ohio Edison pointed to affidavits and depositions which indicated that the truck was sold to and used by persons whom it reasonably thought would realize that these safety devices were lacking, and would comprehend the nature of the danger involved.

In opposition to Ohio Edison's motion, Childers filed a brief which did not point to any facts of record which would tend to contradict the facts identified by Ohio Edison. Rather, she essentially argued that if the court were to grant her all reasonable factual inferences, genuine issues of material fact remained and precluded a grant of summary judgment. We disagree. Clearly, Ohio Edison pointed to facts of record which, if uncontradicted, demonstrated that it met its duty of due care and was not negligent.

■ Since Childers failed to point to facts of record which contradicted the facts identified by Ohio Edison, we find that under the rule of *Celotex*, she failed to meet her burden to produce evidence sufficient to establish an essential element of her case against Ohio Edison—Ohio Edison's breach of a duty of care. While Childers argues on appeal that there were, at the time of Ohio Edison's motion, facts of record which did contradict the facts identified by Ohio Edison, we find it unnecessary to address this contention. Because Childers failed to identify those specific facts in her opposition to Ohio Edison's motion, she failed to meet the obligation placed on her by Fed.R.Civ.P. 56(e) and *Celotex*. Where a party opposing a motion for summary judgment has the burden of persuasion, and the moving party has identified sufficient facts of record to demonstrate that no genuine issue of material fact remains, the nonmoving party is obliged to identify those facts of record which would contradict the facts identified

---

4. Although Childers' complaint against Ohio Edison raises additional contentions of negligence, these are the contentions she raised in opposition to Ohio Edison's motion for summary judgment at the district court level. Childers does argue on appeal that the district court erroneously dismissed these additional contentions; we find, however, that these arguments were not fairly presented to the district court, and decline to address them here.

by the movant. *See First Nat'l Bank of Pa. v. Lincoln Nat'l. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987) (nonmoving party with burden of persuasion may not rest on mere denials to withstand motion for summary judgment); *Equimark*, 812 F.2d at 144 (nonmoving party with burden of persuasion must make showing of record evidence sufficient to withstand motion for summary judgment); *see also Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552–53; Fed.R. Civ.P. 56(e).

We realize that the rule of law announced here can be interpreted as an extension of *Celotex*. We believe, however, that allowing a nonmoving party opposing a motion for summary judgment to rest on mere denials where there are unidentified facts of record which may contradict the facts identified by the movant would be an unworkable and illogical rule. It would require the district judge to search through an often voluminous written record for facts which might support the nonmovant's claim, and would require this Court to review the district judge's search to insure that no facts were missed. It would permit the party to present facts, and argument based on those facts, to the Court of Appeals where that party had not identified those facts to the district court. We also believe that any other holding would misread the requirement of Rule 56(e) that the nonmoving party "set forth specific facts showing that there is a genuine issue for trial." F.R.Civ.P. 56(e). Therefore, we will affirm the district court's order granting summary judgment in favor of Ohio Edison.

## III.

The second ruling Childers appeals from is the district court's grant of summary judgment, in favor of defendants Hugh L. Strickland and Toombs Truck and Equipment Company. The district judge dismissed Childers' claims against these defendants upon Strickland's and Toombs' oral motions at a pre-trial conference. Apparently,[5] the district judge was persuaded that Childers would be unable to establish a causal relationship between her injuries and the actions of these defendants. As before, our review of this grant of summary judgment is plenary. *Equimark*, 812 F.2d at 142.

■ Strickland and Toombs were the dealers who sold, respectively, the truck cab and chassis and the digger/derrick unit which Childers claims were defective. The district judge was apparently persuaded— indeed Childers virtually admitted—that these defendants did not alter the products they received from the defendant manufacturers. While we find no fault with this determination, such a determination was not a sufficient ground to dismiss Childers' claims against these defendants.

Childers sued these defendants under a products liability theory. Pennsylvania has expressly adopted section 402A of Restatement (Second) of Torts. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). Section 402A states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

■ Section 402A permits a person injured by an allegedly defective product to sue any seller of that product, if that seller is engaged in the business of selling such a

---

5. The district judge did not set forth the reasons for his ruling on the record.

product. *See* Restatement (Second) of Torts § 402A comment f (1965) ("[this section] applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant"). Since Strickland is the GM dealer who sold the allegedly defective truck cab and chassis, and Toombs is the Pitman dealer who sold the allegedly defective digger/derrick unit, both were properly named as § 402A defendants, and it was error for the district court to dismiss Childers' claims against them prior to a determination of the merits of Childers' product liability claims.[6]

Moreover, this dismissal can not be deemed harmless since, as detailed *infra* section IV., we will reverse the district court judgment in favor of the defendant manufacturers. Therefore, the district court's dismissal of claims against defendants Strickland and Toombs must be reversed.

## IV.

■ The most significant of Childers' contentions for purposes of further proceedings concern the rulings of the district judge during trial barring the introduction of evidence concerning the lack of a back-up alarm, the placement of the rear remote operators station, and the allegedly defective brake system against the remaining defendants.

### A.

As a preliminary matter, it is necessary to determine the scope of our review of these rulings. The defendants argue that as these rulings concern the introduction of evidence, our review is limited to abuses of discretion. *See Kane v. Ford Motor Co.*, 450 F.2d 315, 316 (3d Cir.1971) (per curiam).

Childers, however, insists that these rulings were actually tantamount to grants of summary judgment or a directed verdict, and that our review should be plenary.

We agree with Childers. In ruling that evidence regarding these alleged defects would not be admissible, the district judge was making a legal determination. Pennsylvania courts have held that in applying section 402A, the trial judge must decide a threshold issue as a matter of law: whether the defects alleged, if proven, would render the product "unreasonably dangerous" as that term is used in § 402A. *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 558, 391 A.2d 1020, 1026 (1978); *Hon v. Stroh Brewery Co.* 835 F.2d 510, 512 (3d Cir.1987). The parties to this case do not dispute that the district judge was ruling on whether the alleged defects would render the digger/derrick truck "unreasonably dangerous" when he excluded evidence regarding these alleged defects. As we exercise plenary review over a district court's choice and interpretation of legal precepts, we must likewise review the district court's decision to bar evidence regarding the alleged defects.[7]

### B.

As noted above, under Pennsylvania law the determination whether a product is "unreasonably dangerous" as that term is used in section 402A is a judicial function. *Azzarello*, 480 Pa. at 558, 391 A.2d at 1026. Determining whether a product is "unreasonably dangerous" requires a court to engage in the requisite balancing to "decide whether, under plaintiff's averment of the facts, recovery would be justified...." *Azzarello*, 480 Pa. at 558, 391 A.2d at 1026. Only after this judicial determination has been made is the case submitted to the jury so that it can consider whether the facts of

---

6. We recognize that these defendants, if found liable, might well be entitled to contribution or indemnification from the defendant manufacturers. Nevertheless, § 402A does not provide for the dismissal of claims against a less culpable retailer where the potentially culpable manufacturer is also a named defendant. A plaintiff, if able to win a judgment on his products liability claims, is entitled to a judgment against each properly named section 402A seller.

7. We are puzzled by the district judge's decision to make this legal determination in the posture of an evidentiary ruling. The legal determination whether a product is "unreasonably dangerous" under Pennsylvania law is tantamount to—and should more appropriately have been—a ruling made upon motion for summary judgment or a directed verdict.

the case support the averments of the complaint. *Id.* at 558, 391 A.2d at 1026.

This Court has recently addressed the nature of a trial judge's determination of this threshold question. In *Hon v. Stroh Brewery Co.,* 835 F.2d 510 (3d Cir.1987), we wrote:

> The court must ... balance the product's social utility against its unavoidable risks to determine whether the condition of the product could be labeled "unreasonably dangerous" and the risk of loss placed on the manufacturer.

*Hon,* 835 F.2d at 512.[8]

In most cases, a court will have little difficulty making this determination. Where it is alleged a warning will make a product safe, for example, only unusual facts would lead a court to conclude that the product's social utility will be diminished by requiring a warning.

■ In this case, two of the defects alleged by Childers—the lack of a back-up alarm and the allegedly defective brake system—fall into this category. Based on the averments of the plaintiff in the record before us on appeal, we conclude that these defects, if proven, would render the digger/derrick truck "unreasonably dangerous". The claims based on these alleged defects are the result of acts or omissions of the defendants, and remedying these conditions could not seriously impair the utility of the product. These alleged defects should have been submitted to the jury. *See Hammond v. International Harvester Co.,* 691 F.2d 646, 651 (3d Cir. 1982) (applying Pennsylvania law) ("[t]he very existence of a safety device which was produced by the manufacturer, and which would probably protect the operator from serious injuries, is itself strong evidence that a tractor lacking such a device is not equipped with every element necessary to make it safe for use."); *Hollinger v. Wagner Min. Equip. Co.,* 667 F.2d 402 (3d Cir.1981) (applying Pennsylvania law) (failure of manufacturer to equip mining vehicle with back-up alarm precluded grant of summary judgment where alarm was feasible, and jury might infer that alarm would have prevented injury). We will reverse the district judge's "evidentiary" ruling which effectively resulted in a directed verdict on these issues in favor of the remaining defendants.

■ In this case, the issue of the "unreasonable dangerousness" of the location of the operator's station is an issue which we believe would be better decided after further inquiry. Childers contends that the operator's station could have been located so that the digger/derrick truck would have been safer. Based upon the record before us, however, we can not determine whether the utility of the digger/derrick truck would have been impaired if the operator's station were relocated. We will therefore remand this issue for consideration by the district court in accordance with this opinion.

We are aware that the decisions of the Pennsylvania courts do not explicitly provide for the procedure described above. Two decisions, however, one of this court and one of the Pennsylvania Superior Court do require remand of the issue of "unreasonable dangerousness" to the trial court for further development of a record. *See Hon v. Stroh Brewery Co.,* 835 F.2d 510, 514 (3d Cir.1987) and *Fravel v. Suzuki Motor Co.,* 337 Pa.Super. 97, 486 A.2d 498, 502 n. 3 (1984). We conclude that such a procedure is necessary to comport the dictates of *Azzarello* with the requirements of the case at bar. We anticipate that the Pennsylvania Supreme Court would remand for a similar procedure were it presented with the issue.

## V.

Two miscellaneous issues remain before we can conclude our discussion of this case. First, we must address the situation of

---

8. The plaintiff, of course, must still convince the jury that the product was in fact defective, i.e. that the product lacked an element necessary to make it safe for its intended use, or contained a condition rendering it unsafe for its intended use. *Azzarello,* 480 Pa. at 559–60 n. 12, 391 A.2d at 1027 n. 12. The plaintiff must also convince the jury that the injury was caused by the defect. *Id.*

third-party defendant Power Line Equipment Rentals, Inc. Second, we must address the scope of issues and parties to those issues to be subject to retrial on remand.[9]

### A.

 Power Line was impleaded by defendant Pitman. Over Pitman's objection, the district judge granted Power Line's motion for a directed verdict at the conclusion of its case. After the jury reached its verdict, the district court issued a written order of judgment in favor of the remaining defendants, and third-party defendant Power Line.

Although Childers appeals from the district court's order of judgment, she does not contend that she has standing to appeal from the judgment in favor of Power Line, a third-party defendant she never sued. Instead, it is the third-party plaintiff, Pitman, who contends that Power Line was improperly released from this case. Pitman, however, has not filed a notice of appeal from either the district court's grant of a directed verdict in favor of Pitman, or the district judge's written order of judgment. Nevertheless, Pitman asserts that we should not dismiss its claim against Power Line, and points to our recent opinion in *Luzadder v. Despatch Oven Co.*, 834 F.2d 355 (3d Cir.1987) as offering support for its argument. We disagree.

In *Luzadder*, the appellant appealed a district court's order granting summary judgment in favor of a defendant who had impleaded a third-party defendant. In granting summary judgment to the defendant, the district court had no alternative but to grant summary judgment in favor of the third-party defendant, as the third-party defendant's liability was contingent

upon a finding that the primary defendant was liable. In that context, we found that requiring the primary defendant to file a separate notice of appeal to preserve its contingent rights, where the only possible ground for that appeal would be that the district court had erred in granting summary judgment in favor of that defendant, would "elevate form over substance and lead to an unjust result." *Luzadder*, 834 F.2d at 357 n. 1.

This case presents a starkly different scenario. The district court's grant of a directed verdict in favor of Power Line was not subsumed in the jury verdict in favor of Pitman, but rather was made upon separate motion of Power Line prior to the conclusion of the jury trial. An appeal of that directed verdict would involve consideration of whether that order of the district court was erroneous, not whether the jury verdict against Pitman was erroneous. In addition, Pitman constituted the primary opposition to Power Line's motion for a directed verdict at the district court level.

Given these facts, we find that an appeal of the district judge's directed verdict in favor of Power Line is not properly before us. Although the decisions of this and other courts allow for liberal construction of notices of appeal,[10] Pitman has filed no notice of appeal with this Court. As the requirement that an appellant file a notice of appeal is "mandatory and jurisdictional," *see* Fed.R.App.P. 3 and 4, General Note (citing *United States v. Robinson*, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960)), and this case can and should be factually distinguished from our decision in *Luzadder* and other cases such as *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734 (5th Cir.1980), we conclude that Pitman failed to meet the procedural requirements for appealing the district court's order.

---

9. Childers also asserts that the district judge's jury charge constituted reversible error. Because we reverse on other grounds, we need not address this contention.

10. *See, e.g., Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 357 n. 4 (3d Cir.1984) (discussing the policy of liberal construction of notices of appeals where it is unclear from the notice whether a party appeals from a particular order or ruling); *United States v. One 1977 Mercedes*

*Benz,* 708 F.2d 444, 451 (9th Cir.1983) (holding that where a defendant's notice of appeal failed to specify that she was appealing from the district judge's order dismissing her claims against third-party defendants, she should be permitted to amend her notice of appeal to include dismissal of the third-party complaint), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984).

### B.

We must still determine what relief is appropriate on remand. As we have noted previously, *Heckman v. Federal Press Co.*, 587 F.2d 612, 619 (3d Cir.1978), the general rule in the federal courts regarding the granting of a new trial was stated by the Supreme Court in *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931):

> Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.

Additionally, as we noted in *Heckman,* the courts of appeal have broad discretion to grant a new trial as to some or all issues. *Heckman,* 587 F.2d at 619 (citing 6A Moore's Federal Practice § 59.06 (2d ed. 1974)).

Applying these principles to this case, we conclude justice requires that Childers be granted an opportunity to present this case anew to a jury. Although a previous jury rejected Childers' argument that the digger/derrick truck was defective due to the fact that it lacked an interlock and because of its transmission and gear selector, that jury was erroneously precluded from considering the remainder of Childers' contentions that the truck was defective. As the fundamental issue in this case is whether or not the truck was defective, we find that the issues considered by the jury are not so distinct and separable from those improperly barred that a partial retrial would serve the interests of justice. We conclude that a just determination mandates that the jury assess liability with all evidence on all issues in full view. Therefore we will remand this case for a new trial on all issues against defendants Pitman, Joseph, General Motors, Strickland, and Toombs.

### VI.

For the reasons set forth above, we will affirm the district court's grant of summary judgment in favor of Ohio Edison, but reverse its grant of summary judgment in favor of defendants Strickland and Toombs. We do not review the directed verdict in favor of third-party defendant Power Line. Finally, we will reverse the verdict in favor of defendants General Motors, Pitman, and Joseph. The case will be remanded to the district court for further proceedings consistent with this opinion. Each party to bear its own costs.