**Owen SULLIVAN, Plaintiff**

v.

**Feather HOUSTOUN, et al., Defendants.**

No. 4:CV–95–0954.

United States District Court,
M.D. Pennsylvania.

June 14, 1996.

Spero T. Lappas, Harrisburg, PA, Ann Economou, Harrisburg, PA, for Owen Sullivan.

Gwendolyn T. Mosley, Office of the Attorney General, Harrisburg, PA, for Feather Houstoun, Larry Toth, Peter Speaks.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On June 19, 1995, plaintiff Owen Sullivan initiated this action with the filing of a complaint pursuant to 42 U.S.C. § 1983. Sullivan alleges that his right to free speech under the First Amendment was violated by the termination of his employment by the Pennsylvania Department of Public Welfare, Office of Hearings and Appeals. The termination occurred after Sullivan directed a letter to Governor Thomas Ridge. Sullivan also asserts a supplemental claim under the Pennsylvania Whistleblower Law, 43 Pa. Cons.Stat.Ann. § 1421.

Before the court is a motion by defendants for summary judgment.

### DISCUSSION:

#### I. STANDARD OF REVIEW

■ Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex* at 325, 106 S.Ct. at 2554.

■ Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson* at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir.1988).

**524**

## II. STATEMENT OF FACTS

From June 28, 1993, to May 26, 1995, Sullivan was an employee of the Department of Public Welfare, Office of Hearings and Appeals, in the position of Attorney Examiner 2. Defendants are: Feather Houstoun, Secretary of the Department of Public Welfare; Larry Toth, Director of the Department's Bureau of Personnel; and Peter Speaks, Director of the Office of Hearings and Appeals. Speaks was plaintiff's supervisor.

After an initial period of two or three months in which his work performance was good, Sullivan was disciplined on a number of occasions. What followed was a series of incidents in which Sullivan allegedly was insolent toward and uncooperative with Speaks. These incidents included Sullivan's refusal to turn off a tape recorder during discipline-related conferences with Speaks as well as to make changes in memorandum opinions drafted by Sullivan. Finally, on March 28, 1995, Sullivan was suspended by Speaks for five days.

On March 29, 1995, Sullivan wrote a letter to Governor Ridge which read as follows:

Dear Sir,

I am a full-time Attorney Examiner with the Department of Public Welfare's Office of Hearings and Appeals in Harrisburg. I function full time as an administrative law judge adjudicating formal and recipient appeals within the Department's administrative review process.

On March 28, 1995, I was unlawfully suspended without pay for five (5) days by the OH & A Director, Peter Speaks, for refusing to adopt his revisions to one of my recommendations (Appeal of D.R.), and for refusing in another case (Appeal of Hope Intermediate Residences) to rule on behalf of the Department. And he also suspended me for refusing to shut off my tape recorder when attempting to discipline me for these "infractions".

To a degree, this is the perpetration of an illusion and misrepresentation. Moreover, his actions violate Appellants' Federal Civil Rights and guarantees for having fair and impartial hearings, and unlawfully compel violations of the Code of Judicial Conduct and the Code of Professional Responsibility to which I am duty bound. But worse still, his actions are complet[e]ly unnecessary. That is, if he doesn't like our rulings or recommendations—he doesn't have to adopt them. The suspicion is though that he is so unacquainted with DPW regulations that he doesn't pos[s]ess the wherewithal to construct a well reasoned amendment or reversal.

The current situation at DPW–OH & A is critical and may be laid directly at the feet of the current Director Speaks and his Assistant David Ward—both of whom are Casey appointments. If you need to know more, I can be contacted at 717–232–2453 (H) and, if I am still working there, 717–783–6249 (W).

Exhibits in support of Plaintiff's Brief in Opposition to Motion for Summary Judgment, Exhibit 3. The letter was signed by Owen M. Sullivan, Esquire, and copied to Fred Holland, Esquire, and Speaks.

## III. FIRST AMENDMENT AND RETALIATION AGAINST GOVERNMENT EMPLOYEES

Simply stated, Sullivan claims that the letter represents speech protected under the First Amendment and the termination of his employment constitutes retaliation for protected speech.

■ In the context of speech by government employees, both the Third Circuit and the Supreme Court have recognized that there is a balancing of competing interests. The first is that it is essential that government employees be permitted to speak out on matters of public concern. This interest must be balanced against the interest of the state, as an employer, in the efficiency of the public services it provides through its employees. *Pro v. Donatucci*, 81 F.3d 1283, 1287 (3d Cir.1996) (citing, *inter alia, Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Watters v. City of Philadelphia*, 55 F.3d 886 (3d Cir.1995)).

■ In this Circuit, a claim of retaliation is analyzed in a three-step process: (1) the employee must show that the activity in question was protected speech; (2) the employee must show that the activity was a substantial or motivating factor in the alleged retaliatory action; and (3) the employer may establish that it would taken the adverse action regardless of whether the employee had engaged in the protected conduct. *Pro* at 1288 (citing *Watters* at 892); *Swineford v. Snyder County*, 15 F.3d 1258, 1270 (3d Cir. 1994). Defendants have limited their arguments in the motion for summary judgment to the first prong of this analysis. *See esp.* Brief in Support of Motion for Summary Judgment at 9 n. 1.

■ The Third Circuit described the analysis to be undertaken with respect to the first prong as follows:

"An employee's speech addresses a matter of public concern when it can be 'fairly considered as relating to any matter of political, social, or other concern to the community. *Holder* [*v. City of Allentown,*] 987 F.2d [188,] 195 [ (3d Cir.1993) ] (quoting *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690). As the Supreme Court held in *Connick,* this principle is based on the idea that

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. at 147, 103 S.Ct. at 1690. The public concern inquiry is a legal one, to be determined by reference to the "content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48 & n. 7, 103 S.Ct. at 1690 & n. 7. We discussed this analysis in *Holder*:

> The content of the speech may help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to 'bring to light actual or potential wrong-

doing or breach of public trust' on the part of government officials. The form and context of the speech may help to characterize it as relating to a matter of social or political concern to the community if, for example, the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed.

987 F.2d at 195 (citations omitted). A conclusion that the speech concerns private rather than public matter makes it unnecessary to proceed to a consideration of the employer's interests. *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689–90.

*Pro* at 1288.

A review of the letter from Sullivan to Governor Ridge shows that the subject is a matter of public concern. Sullivan accuses Speaks of a lack of competence and integrity in his supervision of the Office of Hearings and Appeals. This accusation is placed in the context of Sullivan's own experience. Although the purportedly wrongful nature of the suspension is discussed, the letter does not seek review of the decision to suspend Sullivan or to prevent the termination; in fact, the last phrase seems to presume that continued employment is not likely.

To this it should be added that much of the content of the letter is taken from a memorandum drafted by Therese L. Mitchell, a member of Governor Ridge's "transition team." Although Sullivan characterizes the opinions as "strikingly similar," Brief in Opposition to Motion for Summary Judgment at 4–5, the memorandum reads in part:

> The suspicion is that the current Director and Assistant Director are so unacquainted with DPW regulations that they themselves do not possess the wherewithal to construct a well reasoned amendment or reversal.
>
> ... To a degree, this is the perpetration of an illusion and misrepresentation.
>
> ... [T]he current situation is critical and may be laid directly at the feet of the current director Speaks and his assistant David Ward.

Exhibits in Support of Plaintiff's Brief in Opposition to Motion for Summary Judg-

ment, Exhibit 2 at 2–3. That many of the comments made by Sullivan are quotations or near-quotations (as well as expansions on the same themes) from a memorandum made by a person directly involved in the political process, i.e. the transition from one gubernatorial administration to the next, demonstrates that the matters discussed are "matters of public concern" for purposes of the "*Pickering* test."

 We conclude that the letter from Sullivan to Governor Ridge was protected speech under the First Amendment.

### IV. QUALIFIED IMMUNITY

Defendants also argue that they are entitled to qualified immunity with respect to Sullivan's First Amendment claim. A defendant is entitled to qualified immunity from a claim of a violation of a constitutional right if the right was not clearly established at the time of the alleged deprivation and the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *In re City of Philadelphia Litigation,* 49 F.3d 945, 961 (3d Cir.1995).

In this instance, defendants do not argue that the right to be free from retaliation against an exercise of free speech is not well established. Instead, they argue that, since the analysis for determining whether conduct is protected activity is fact based, no distinct rule exists and no reasonable official could determine whether the speech in this case would constitute protected activity.

We disagree. The letter at issue basically parrots statements made by a public official who was not associated with or involved in Sullivan's employment problems. The letter only adds statements showing that Sullivan's experience, especially in the two particular cases mentioned, support the more general statements regarding Speaks' competence and ethics. No reasonable public official could conclude that comments echoing and/or consistent with statements made by an official reviewing an agency would not be protected speech.

Defendants are not entitled to qualified immunity.

### V. CONCLUSION

The letter dated March 29, 1995, from Sullivan to Governor Ridge constitutes protected speech under the First Amendment. Defendants are not entitled to summary judgment because no reasonable public official would conclude otherwise.

Defendants' motion for summary judgment will be denied. An appropriate order will issue. An order placing the case on a trial list will issue separately.