Robert **AINBINDER** and Robert
**Barra, Plaintiffs**

v.

**WHITE ASH LAND ASSOCIATION,**
**Defendant**

**No. Civ.A.4:03–0676.**

United States District Court,
M.D. Pennsylvania.

March 28, 2005.

Michael D. Bart, Michael J. Anthony,
Wilkes–Barre, PA, for Plaintiffs.

Bernard A. Podcasy, Wilkes–Barre, PA,
James D. Morris, Law Offices of James D.
Morris, Esq., Erdenheim, PA, for Defen-
dant.

## *MEMORANDUM AND ORDER*

MANNION, United States Magistrate
Judge.

Pending before the court is the plain-
tiffs' motion for summary judgment.
(Doc. No. 18). Based upon the court's
review of the record and relevant case law,
the plaintiffs' motion for summary judg-
ment will be denied, (Doc. No. 18), and the
action for declaratory judgment, (Doc. No.
1), will be dismissed.

On April 25, 2003, the plaintiffs initiated the instant action in which they seek a declaratory judgment to order the defendant to: (1) allow them to backfill mine pits on a certain tract of land known as the "Bliss tract" located in Cherry Township, Sullivan County, Pennsylvania, with fly-ash material; and (2) grant its consent to the Pennsylvania Department of Environmental Protection, ("DEP"), Bureau of Mining and Reclamation, for this procedure. (Doc. No. 1).

In support of this action, the plaintiffs allege that the defendant, White Ash Land Association, is a corporation formed for recreational purposes and owns a parcel of real property located in Sullivan County by means of deed dated June 16, 1955, and recorded in the Sullivan County Recorder of Deeds office in Deed Book 67, page 449 and 450. (Doc. No. 1, ¶ 2). The Grantor in this deed was William A. Monahan. (*Id.*). The plaintiffs, Robert Ainbinder and Robert Barra, are successors in title to William A. Monahan. (Doc. No. 1, ¶ 4).

The Deed from William A. Monahan to the defendant contains the following reservation of rights language:

There is also excepted and reserved from this conveyance (a) all mineral rights and all minerals and metals and natural resources "(but not including timber except as hereinafter provided) W.A.M." of every kind and nature lying on and under said surface, including without limitation all natural gas, petroleum, oil, coal and iron; (b) any and all structures, buildings, equipment, fixtures, pipes, poles, cables, conduits and other improvements, appurtenances, fixtures and utilities now on or under said surface and now or heretofore used for mining operations thereon or thereunder or on adjoining premises of the grantor lying Northerly or Westerly of the granted premises. The grantor reserves for himself, his heirs and assigns the following rights:

1. The perpetual rights of ingress and egress upon, over and beneath the granted premises and to use the granted premises for the purpose of discovering, testing, drilling, mining, stripping, auguring and otherwise developing, extracting and removing all materials and products herein above reserved and excepted and the further perpetual right to do all things which the grantor, his heirs and assigns in his or their sole discretion may deem necessary or convenient in carrying on mining operations of all kinds and activities incidental thereto both on the granted premises and on adjoining premises of the grantor lying Northerly and Westerly of the granted premises, all without liability for injury or damage caused or done to the granted premises or any structures, buildings or improvements now thereon or hereafter placed thereon. There is included among the foregoing rights without in any way limiting the generality thereof the following: The right to have uninterrupted any present natural or artificial flow of water through the granted premises to or from said adjoining premises of the grantor; to transmit electrical energy and other power; to transport materials and products, whether from the granted premises or any other lands, over, across or through the granted premises; to make excavations; to sink or bore slopes, shafts, drifts, tunnels and wells; to erect, maintain, repair and replace buildings, structures, machinery, equipment, fixtures, pipes, poles, cables, conduits and other appurtenances, fixtures, utilities and improvements; to construct ditches, transmission lines, roads, tramways, railroads, tubing, pipe lines and other means of transportation and transportation over, across and through the grant-

ed premises; to designate and grant rights of way therefor with full and free rights of ingress and egress as may be necessary or convenient in the proper development of the same or other lands or in the proper exercise of the rights hereby reserved.

(Doc. No. 1, ¶ 5, Ex. A).

The plaintiffs allege that, during the course of mining operations on the property, large holes were created that require backfilling as required by the Commonwealth of Pennsylvania. (Doc. No. 1, ¶ 6). They further allege that they wish to backfill the property with, among other things, fly ash material, and that the DEP requires the consent of the surface owner to do this. (Doc. No. 1, ¶ 7). The plaintiffs allege, however, that the defendant has refused to grant permission to backfill and reclaim the property thereby causing them damage. (Doc. No. 1, ¶ 8). The plaintiffs allege that, due to the language contained in the reservation of rights clause above, the defendant cannot refuse its consent to the backfilling and reclamation of the property. (Doc. No. 1, ¶ 9).

Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. (Doc. No. 1, ¶ 1).

On November 14, 2003, the defendant filed an answer to the plaintiffs' complaint. (Doc. No. 6).

On December 28, 2004, the plaintiffs filed the instant motion for summary judgment, (Doc. No. 18), along with a brief in support thereof, (Doc. No. 19). On February 11, 2005, the defendant filed an answer to the plaintiffs' statement of facts contained within their motion for summary judgment, (Doc. No. 20), as well as a brief in opposition to the plaintiffs' motion for summary judgment, (Doc. No. 21).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56©).

The Supreme Court has stated that:

"... [T]he plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* The moving party can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3d Cir.1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. *Id.*

The undisputed facts submitted in relation to the plaintiffs' motion for summary judgment establish that the plaintiffs derived their interest in the mineral rights to a certain tract of land known as the "Bliss tract" located in Cherry Township, Sullivan County, Pennsylvania, by mineral deed of Bernice Mining & Contracting, Inc., to Robert Ainbinder and Robert Barra dated September 25, 2001, and filed in the Office of the Recorder of Deeds in and for Sullivan County as Instrument No. 200401547. The plaintiffs' interest in the said mineral rights, by said deed, is derived from the reservation of rights clause, as set forth above, which is contained within a deed from predecessor in title, William Monahan, to the defendant, White Ash Land Association, by deed dated June 16, 1995, and recorded in the Office of the Recorder of Deeds in and for Sullivan County in Deed Book No. 67, page 449 and 450. The reservation of rights clause contained in the deed reserves all mineral rights both on the surface and beneath the surface and the various rights incident to mining any and all minerals or metals upon the land. As previously set forth, these mineral rights were ultimately conveyed to the plaintiffs.

Prior to instituting the instant action, the plaintiffs sought the consent of the defendant to permit them to begin backfilling and reclamation operations of certain gaping holes resulting from coal stripping operations upon the subject premises. According to the plaintiffs, pursuant to 52 P.S. § 1396.4(a)(2)(F),[1] securing the defendant's written consent by way of a "Supplemental C" form is necessary in order to successfully apply to the DEP for the requisite permit whereby the plaintiffs would be permitted to begin backfilling operations.[2]

---

1. This section provides, in relevant part:

   Except for permit applications based upon leases in existence on January 1, 1964 for bituminous coal surface mines, or leases in existence on January 1, 1972 for anthracite coal surface mining operations and all non-coal surface mining operations, the application for a permit shall include, upon a form prepared and furnished by the department, the written consent of the landowner to entry upon any land to be affected by the operation by the operator and by the Commonwealth and any of its authorized agents prior to the initiation of surface mining operations, during surface mining operations and for a period of five years after the operation is completed or abandoned for the purpose of reclamation, planting, and inspection or for the construction of any pollution abatement facilities as may be deemed necessary by the department for purposes of this act.

2. It is unclear whether the defendant disputes this contention. In its answer to the plaintiffs' complaint, the defendant deems "admitted" that averment which sets forth that "[t]he plaintiffs are desirous of backfilling this property with fly ash material from power plants and the Pennsylvania Department of Environmental Protection requires the consent of the surface owner to do this." (Doc. No. 1, ¶ 7; Doc. No. 6, ¶ 7). In response to the plaintiffs' motion for summary judgment, the defendant also deems "admitted" that averment which sets forth "[t]hat securing the consent of the landowner who owned in fee was necessary in order to successfully apply

■ The plaintiffs have an absolute legal obligation to reclaim the land upon which they have engaged in surface mining operations. Moreover, the provision in the reservation of rights clause which permits the plaintiffs to begin and conclude backfilling operations is, "the further perpetual right to do all things which the grantor, his heirs and assigns in his or their sole discretion may deem necessary or convenient in carrying on mining operations of all kinds and activities incidental thereto."[3] The defendant had actual and constructive notice of the reservation of rights clause as contained within the defendant's deed from Monahan to the defendant.

Under Pennsylvania state law, "coal ash" and/or "fly ash" is specifically permitted for use as fill under § 6018.508 ("Coal Combustion Ash and Boiler Slag") of the Solid Waste Management Act, 35 P.S. § 6018.101, et seq.[4]

The plaintiffs are currently appellants in a proceeding before the Pennsylvania Environmental Hearing Board in the matter of Barra and Ainbinder, Appellants, versus the Commonwealth of Pennsylvania, Department of Environmental Protection, and White Ash Land Association, Appellees, filed to Environmental Hearing Board Docket No. 2003–038–C. In that action, the plaintiffs are apparently appealing forfeiture by the DEP of reclamation bonds, valued at $228,560 which were posted by the plaintiffs to ensure compliance with Pennsylvania environmental laws requiring backfilling and reclamation of mine pits.[5]

In their motion for summary judgment, the plaintiffs request this court to grant them summary judgment against the defendant and declare by appropriate order that the above-referenced reservation of rights clause permits the plaintiffs to engage in backfilling and reclamation of the Bliss tract with any and all material authorized by any proper governmental body charged with oversight of such material, including, but not limited to, coal fly ash.

to the Pennsylvania Department of Environment Protection (D.E.P.) for the requisite permit whereby the Plaintiffs would be permitted to begin backfilling operations." (Doc. No. 18, ¶ 10; Doc. No. 20, ¶ 10). The defendant has denied, however, that averment set forth by the plaintiffs which reads "[t]hat the Plaintiffs herein are assignees and successors in interest to at least five bonds which bonds may be forfeited if the Plaintiffs are not either given consent to begin backfilling operations or are not permitted by law to begin backfilling operations." (Doc. No. 18, ¶ 18). Here, the defendant responds "Denied. As noted, he (sic) bonds have in fact been forfeited by the Department of Environmental Protection and the Plaintiffs' appeal awaits decision by the Environmental Hearing Board. **Further, the Plaintiffs are under an absolute legal obligation to reclaim the land on which they have engaged in surface mining operations, and no consent is required for them to undertake reclamation activities.**" (Doc. No. 20, ¶ 18)(Emphasis added).

3. The defendant admits that this is the clause that permits the plaintiffs to begin and conclude backfilling operations, but argues that "mining operations" within the meaning of the 1955 deed did not include reclamation activities which, it argues, did not become a defined legal obligation until 1971, with the passage of the Surface Mining Control and Reclamation Act, 52 P.S. § 1396.1, et seq. (Doc. No. 20).

4. The defendant admits this "subject to the requirements that the DEP must first review and grant a permit application to undertake such activities and that the consent of the surface land owner must also first be obtained." (Doc. No. 20).

5. The plaintiffs contend that they are attempting to avoid the "threatened forfeiture" of the reclamation bonds in this action. However, the fact that they are appellants in the action, would indicate that adverse action in the form of forfeiture has already been taken and the plaintiffs are now appealing that determination.

The plaintiffs apparently base their action for declaratory judgment and motion for summary judgment upon the premise that they are required to obtain the defendant's consent prior to reclaiming the property in question. As noted above, it is unclear whether the defendant agrees or disagrees with this premise, as it has presented conflicting positions.

■ Based upon a review of relevant Pennsylvania state law,[6] this court finds that the defendant's written consent by way of a Supplemental C form is unnecessary for the plaintiffs to proceed with their application to obtain a permit to backfill and reclaim the property in question. In *Sedat, Inc. v. Fisher,* 420 Pa.Super. 469, 617 A.2d 1 (1992), *("Sedat I"),* the Superior Court of Pennsylvania held that a subsurface owner is *not* required to obtain the surface owner's consent in order for the subsurface owner to apply for a permit to conduct surface mining operations. The facts of that case are set forth as follows:

Appellant [Sedat, Inc.] owns a sixty-four acre subsurface tract of land in Armstrong County. This ownership is evidenced by a coal deed from the Twin Oaks Coal Company (Twin Oaks) to appellant. The deed has been duly recorded in the Office of the Recorder of Armstrong County. Appellees [the Fishers] are the owners of a fifty-one acre tract of surface land in Armstrong County, underneath which lies appellant's subsurface tract. Appellees' ownership is evidence (sic) by a deed from William Martin Schreckengost to them. This deed has also been duly recorded in the Office of the Recorder of Armstrong County and contains a clause "excepting and reserving all the coal and stripping rights as previously conveyed by prede-

cessors in title." *See* Exhibit "C", Complaint in Equity. Appellant wishes to apply for a surface mining permit pursuant to Section 1396.4 of the Surface Mining Conservation and Reclamation Act, 52 Pa.S.A. § 1396.4 (SMCRA), to mine the coal in the aforesaid subsurface tract pursuant to the rights granted to it by the coal deed from Twin Oaks.

Appellant has requested appellees to sign a consent form which it believes the applicable statute and the accompanying regulations of the Department of Environmental Resources (DER) require from a surface landowner to accompany an application for a mining permit. The purpose of the consent form is to permit the miner to enter the property of the surface owner in order to conduct mining activities and for five years thereafter to enter the property to reclaim it, to construct pollution abatement facilities and to permit DER to enter to inspect the property. Appellees have refused to sign the consent form. They contend that appellant would be successful in obtaining a surface mining permit without their consent and that they are not interfering in any way with appellant's rights under its coal deed from Twin Oaks. However, appellant believes that it is unable to exercise its rights under the coal deed from Twin Oaks without appellees' consent to enter the surface land.

*Id.* at 471–72, 617 A.2d 1.

Sedat filed a complaint in the Court of Common Pleas of Armstrong County seeking to compel the Fishers to give written consent to Sedat to enter onto the property to conduct mining and reclamation activities. The court dismissed the matter finding that, because Sedat had failed to

---

**6.** In exercising diversity jurisdiction in this declaratory judgment action this court is obliged to apply the substantive law of Pennsylvania. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

actually apply for a permit prior to bringing the action, any determination on the matter would amount to an advisory opinion. Sedat filed an appeal.

On appeal, the Superior Court found that the coal deed by which Twin Oaks conveyed the subsurface land in question to Sedat was a deed of severance and, therefore, the land in question consisted of two separate estates, (i.e., the surface and the mineral or subsurface), the ownership of which are severed.

The court noted that, pursuant to 52 P.S. § 1396.3a(a), one who wishes to conduct surface mining activities is required to obtain a permit from DER in order to do so. Furthermore, the court noted that 52 P.S. § 1396.4(a)(2)(F) reads, in relevant part:

Except for permit applications based upon *leases* in existence [for a period of time not here applicable], the application for a permit shall include, upon a form prepared and furnished by the department, the written consent of the *landowner*[7] to entry upon any land to be affected by the operation by the operator and by the Commonwealth and any of its authorized agents prior to the initiation of surface mining operations, during surface mining operations and for a period of five years after the operation is completed or abandoned for the purpose of reclamation, planting, and inspection or for the construction of any pollution abatement facilities as may be deemed necessary by the department for the purposes of this act . . .

*Id.* at 473, 617 A.2d 1. (Emphasis supplied).

According to the Superior Court, reading of the SMCRA, § 1396.4 contemplates the situation where the applicant for a mining permit is a *lessee* of the landowner, because it refers in Section (a)(2)(F) to permit applications based upon "leases". The Legislature did not contemplate requiring an entity such as Sedat to obtain the consent of the surface landowner to conduct mining activities in an estate in land which it already owned by virtue of a duly recorded deed of severance.

This reading, according to the court, is supported by pertinent DER regulations. Specifically, 25 Pa.Code § 86.64, relating to coal mining permits, provides, in relevant part:

(b) The application for a permit shall provide *one* of the following for lands within the permit area:

(1) A copy of the written consent of the current *surface owner* to the extraction of coal by surface mining methods.

(2) A copy of the *document of conveyance that expressly grants or reserves the right to extract the coal by surface mining methods* and an abstract of title relating the documents to the current surface land owner.

*Id.* at 474, 617 A.2d 1. (Emphasis supplied).

The following section of the regulation then repeats the language of 52 P.S. § 1396.4(a)(2)(F). *See* 25 Pa.Code § 86.64©).

Of further importance, the court noted that the regulations provide:

For the purpose of this section, the term 'lease' means an agreement in which the *surface landowner is the lessor and the applicant is the lessee* or the assignee of the lessee. *A deed of severance is not a lease.*

*See* 25 Pa.Code § 86.64(d)(Emphasis supplied).

---

7. Landowner is defined as "a person holding title to or having a proprietary interest in either surface or subsurface rights." 52 P.S. § 1396.3.

Thus, the Superior Court found that an applicant, such as Sedat, who holds title to an estate in the subsurface land by grant of a severance deed, need only provide with the application a copy of the document of conveyance as set forth in 25 Pa.Code § 86.64(b)(2), and that no necessity existed for Sedat to obtain and attach the written consent of the Fishers to an application for a surface mining permit under the circumstances of Sedat's ownership of the subsurface mineral rights in question. Given this, the court affirmed the decision of the lower court dismissing the action.[8]

Subsequent to the Superior Court's decision, Sedat contracted with Seven Sisters to mine the sixty-four acres of subsurface coal.[9] Seven Sisters submitted to the DEP an application for a permit to strip mine coal from the property. The DEP returned the application to Seven Sisters as incomplete because the application did not include a landowner consent form, (i.e., Supplemental C Form), from the Fishers. Sedat and Seven Sisters filed a petition for writ of mandamus and equitable relief in the Commonwealth Court of Pennsylvania in which they sought a court order directing the DEP to review the application for a permit without the consent form; enjoining the DEP from refusing to accept the application without the consent form; or, if it was determined that the consent form was required, compelling the Fishers to sign the form. *Sedat, Inc. v. Commonwealth of Pennsylvania, et al.*, 165 Pa. Cmwlth. 431, 645 A.2d 407 (1994) ("Sedat II").

After deciding several miscellaneous matters, including the standing of Sedat to bring the action and the effect of the Superior Court's prior decision in Sedat I, the Commonwealth Court addressed the issue of whether it was necessary for Seven Sisters to submit the Supplemental C Form. In doing so, the Commonwealth Court followed the line of reasoning set forth previously by the Superior Court in Sedat I and concluded:

> In this case, because Sedat owns the subsurface mineral rights below the Fisher's surface property, the subsurface rights are severed from the surface. The creation of these two separate estates through a severance deed, gives Seven Sisters, who wishes to mine the coal for Sedat, the right to enter the property and conduct mining activities. Sedat, as owner of the separate subsurface coal rights may furnish to the department a copy of the deed of conveyance from Twin Oaks to Sedat, which grants Sedat the right to extract coal by surface mining methods, pursuant to 25 Pa.Code § 86.64(b).
>
> Thus, in accordance with DER's own regulations, 25 Pa.Code § 86.64(b), Seven Sisters need not furnish a Supplemental C with the application for a permit, and, pursuant to Section 1396.4(a)(2)(F) of SMCRA, the department may enter the Fisher's property to inspect the cite during mining activities.

*Sedat, Inc. v. Commonwealth of Pennsylvania, et al.*, 645 A.2d at 413.

Following the Superior and Commonwealth Courts' decisions in Sedat I and Sedat II, the Environmental Hearing

---

**8.** The Superior Court noted that its disposition to the action was not advisory because the court had not pre-reviewed any mining permit application, nor had it passed upon its likely success or not. *Sedat* at 477–78, 617 A.2d 1.

**9.** Sedat and Seven Sisters are two separate companies owned and operated by the same family. *Sedat, Inc. v. Commonwealth of Pennsylvania, et al.*, 165 Pa.Cmwlth. 431, 645 A.2d 407, 409 (1997).

Board has recognized that, where the right to enter and mine is derived from documents severing the minerals from the surface estate, a consent form executed by the surface owner is unnecessary. *See e.g., Middleport Materials, Inc. v. Commonwealth of Pennsylvania, et al.,* 1997 WL 36893 (Pa.Env.Hrg.Bd).

The facts of the instant action are virtually indistinguishable from those in Sedat I and Sedat II. To this extent, the plaintiffs are the owners of the mineral rights to the "Bliss tract" located in Cherry Township, Sullivan County, Pennsylvania. Their ownership is evidenced by a mineral deed from Bernice Mining & Contracting, Inc., to the plaintiffs dated September 25, 2001, and filed in the Office of the Recorder of Deeds in and for Sullivan County as Instrument No. 200401547. (Doc. No. 18, Ex. A).

The defendant is the surface owner of a parcel of land, which includes the "Bliss tract." This is evidenced by deed dated June 16, 1955, between William Monahan and the defendant, which is recorded in the Office of the Recorder of Deeds in and for Sullivan County in Deed Book No. 67, page 449 and 450. (Doc. No. 18, Ex. B). This deed contains a reservation of rights clause which reserves all mineral rights both on the surface and beneath the surface and the various rights incident to mining any and all minerals or metals upon the land. These mineral rights were ultimately conveyed to the plaintiffs.

From the record, surface mining has already occurred on the Bliss tract and it is only for purposes of backfilling and reclamation that the plaintiffs will be seeking a permit from the DEP pursuant to § 1396.4 of the SMCRA.[10] The plaintiffs have requested the defendant sign the Supplemental C form, which they apparently believe is required pursuant to § 1396.4(a)(2)(F). The defendant has refused to sign the consent form. The plaintiffs are now, therefore, attempting to have this court enter a declaratory judgment to order the defendant to allow the plaintiffs to backfill and reclaim the property and to grant their consent to the DEP, Bureau of Mining and Reclamation, for this procedure.

These facts run parallel to those set forth in Sedat I and Sedat II and, therefore, this court is bound by the Pennsylvania courts' determination of the matter. Thus, the court finds that, because the plaintiffs are the owners of a separate mineral estate of the land in question, no necessity exists for the plaintiffs to obtain and attach the written consent (i.e., Supplemental C), to an application for a permit to backfill and reclaim the property under § 1396.4(a)(2)(F). Instead, the plaintiffs may apply for the requisite permit by providing, with the application, a copy of the document of conveyance as set forth in 25 Pa.Code § 86.64(b)(2). The declaratory judgment requested by the plaintiffs is, therefore, unnecessary, as the plaintiffs have the right to apply for the permit to backfill and reclaim the property in question without the Supplemental C consent form.[11]

---

**10.** There is no indication from the record that the plaintiffs have either applied for or been denied the requisite permit.

**11.** Because the court is disposing of this matter on the basis that the applicable Pennsylvania statute and DER regulations *do not* require the written consent of the defendant as part of the application to obtain a permit to backfill and reclaim the property in question, the plaintiffs' reliance on *Maul v. Guthrie,* 1977 WL 210 (Pa.Com.Pl. Oct. 26, 1977), (Court of Common Pleas interpretation that agreement to allow surface mining includes implied consent for reclamation activities) is inapplicable.

Based upon the foregoing, **IT IS HERE-BY ORDERED THAT:**

(1) the plaintiff's motion for summary judgment, (**Doc. No. 18**), is **DENIED**;

(2) the plaintiff's action for declaratory judgment, (**Doc. No. 1**), is **DISMISSED**

(3) the final pretrial conference scheduled for April 1, 2005 and the trial scheduled for April 18, 2005 are hereby cancelled.

(4) the clerk is directed to close the file.