

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2003

# Martin v. HealthCare and Ret

Precedential or Non-Precedential: Non-Precedential

Docket 02-3398

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Martin v. HealthCare and Ret" (2003). *2003 Decisions*. Paper 541.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/541

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Case No: 02-3398

_____

SANDRA MARTIN,

Appellant

v.

HEALTH CARE & RETIREMENT
CORPORATION

On Appeal From The United States District Court
For The Western District of Pennsylvania
(Civ. A. No. 00-850)

District Judge: The Honorable Donald Ziegler

_____

Submitted Under Third Circuit LAR 34.1(a)
May 14, 2003

_____

Before: RENDELL, SMITH and ALDISERT, <u>Circuit Judges</u>

(Opinion Filed: May 20, 2003)

_____

OPINION

_____

SMITH, <u>Circuit Judge</u>

## I. FACTS

Sandra Martin is an African American woman who was born on January 10, 1944. Martin was employed by Health Care and Retirement Corporation ("HCR") at their Sky Vue Terrace facility in Pittsburgh, Pennsylvania.

In March of 1998, Martin was Director of Nursing. At that time the Pennsylvania Department of Health cited Sky Vue for failure to "provide each resident with sufficient fluid intake to maintain proper hydration and health." Nonetheless, Martin's individual performance was evaluated in April of 1998 as "above standard." In the intervening months, Gregory Tinz became the Home Administrator and Martin's supervisor. Tinz rated Martin "above standard" in August, 1998. However on September 25, 1998, Tinz met with Martin to discuss some problems with her job performance. At that meeting, Martin accused Tinz of being a racist. Subsequently, in his September evaluation of Martin, Tinz rated Martin's overall performance as "standard" and on October 1, Martin was temporarily suspended.

The Department of Health issued a second citation against Sky Vue for insufficient hydration of residents in October of 1998. After the second citation, Martin was demoted to the position of Director of Clinical Programs, an assistant Director of Nursing position. Donna Erdeljac became the new Director of Nursing.

On October 27, 1998, Mrs. Marchewka, the wife of a patient/resident, allegedly

twice attempted to speak to Martin but was ignored. Mrs. Marchewka complained to Tinz about Martin.

Then, on November 2, 1998, Corine Wilson nee Twomey, the daughter of another patient/resident, approached Nurse Darrell Peters and told him that she saw urine under her mother's wheelchair cushion and wanted to speak to the Director of Nursing. Peters could not locate Erdeljac, so he told Martin about Twomey's complaint. Martin did not speak to Twomey or investigate the problem, but told Peters to speak with Twomey himself and leave a note for Erdeljac.

On November 5, 1998, Martin was terminated. Tinz told Martin the reason she was being terminated was because she failed to respond to resident family concerns.

## II. PROCEDURAL POSTURE

Martin filed a complaint alleging that she was terminated in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et. seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. Ann. § 951 *et. seq.* HCR moved for summary judgment, and the District Court granted the motion by an order and opinion dated July 31, 2002.

## III. JURISDICTION

The District Court had jurisdiction over Martin's Title VII and ADEA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her PHRA claim

3

pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over the appeal from summary judgment pursuant to 28 U.S.C. § 1291.

## IV. STANDARD OF REVIEW

This Court exercises plenary review over an order of a district court granting summary judgment. *See Bieregu v. Reno*, 59 F. 3d 1445, 1449 (3d Cir. 1995). Summary judgment must be granted if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

## V.   LEGAL ANALYSIS

A claim of termination in violation of Title VII and the ADEA is analyzed under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff must establish a prima facie case of discrimination, then the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the termination and finally plaintiff must prove by a preponderance of the evidence that the employer's proffered reason was a pretext for discrimination. *See id.* at 802.

Here, the parties agree that Martin made out a prima facie case under Title VII and the ADEA. HCR then proffered Martin's actions in the Twomey and Marchewka

4

incidents as the legitimate, non-discriminatory reasons for her termination. Thus, the main issue is whether Martin has introduced sufficient evidence to permit a finder of fact to reasonably infer that these reasons were pretext.

In order to show pretext, Martin must point to some evidence from which a reasonable factfinder could either disbelieve HCR's articulated legitimate reason or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of HCR's actions. *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265, 283 (3d Cir. 2001) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)); *Ezold v. Wolf, Block, Shorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992). To disbelieve the employer's proffered reason, the question is not whether the action was prudent, but whether appellant has shown "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence[.]" *Fuentes*, 32 F. 3d at 765 (internal quotation omitted). Alternately, to show the discriminatory reason was more likely than not the motivating reason, a plaintiff can introduce evidence of the employer's past treatment of her, or evidence of the employer's general policy and practice with respect to minority employees. *Ezold*, 983 F.2d at 523-24.

Martin points to six pieces of evidence which she claims could support a finding of pretext. First, she points out that Stephanie Russo, a Human Resources manager and

someone Martin claims was a decision-maker[1], stated that the Marchewka incident might have been a misunderstanding. Even if Russo were a decision-maker, there were other decision-makers such as Tinz who believed the misconduct was intentional, and a disagreement among decision-makers does not show pretext. *See Fuentes*, 32 F.3d at 767. Additionally, even if Tinz was wrong or mistaken in believing Martin's misconduct, this does not make his reason pretextual. *See Fuentes*, 32 F.3d at 765 ("To discredit the employer's proffered reason, however, the plaintiff cannot show that the employer's decision was wrong or mistaken since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent."); *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (question is not whether employer made a sound employment decision, but whether the real reason for the decision was discrimination).

Second, Martin says that pretext can be shown by the fact that Tinz never personally spoke with her or Peters regarding the two incidents, and that he did not give her an opportunity to defend herself.[2] Even if Tinz was remiss in relying upon the complaints brought to him by Ms. Marchewka and relayed to him by Erdeljac, rather than

---

[1] Martin contends that the District Court erred in concluding that Russo was not a decision-maker. The District Court arrived at this conclusion based on Russo's testimony that she did not give any input into whether Martin should be terminated. However, Martin points out that HCR included Russo in the list of "persons who participated in the decision to terminate Martin." Even presuming Russo was a decision-maker, her testimony was insufficient to establish pretext for the reasons discussed in the main text.

[2] Erdeljac did discuss the incidents with Martin, however.

6

speaking with Martin or Peters directly, the question is whether Tinz actually believed the descriptions of the incidents to be accurate and relied upon them in Martin's termination. *See Fuentes*, 32 F.3d at 766-67. Tinz stated that he did not speak with Martin because she had a pattern of failing to respond to complaints and criticism and her credibility "was very low." Martin did not introduce any evidence suggesting that Tinz did not believe the incidents relayed by Marchewka and Erdeljac. Martin even admitted that she knew of no evidence showing that these reports were not Tinz's motivation for firing her. Her evidence only challenged the underlying truth of those reports. Therefore, Tinz's failure to give Martin a chance to tell her side of the story cannot support a finding of pretext.

Third, Martin points to the inconsistencies between what Peters says he reported versus what Tinz, Russo and Erdeljac claim he said. Erdeljac, Russo and Tinz all testified that Peters asked Martin to speak with Twomey and she refused. However, Peters testified that he never asked Martin to speak to Twomey, only that he informed her of the situation. This discrepancy is not enough to establish pretext. First, as discussed *supra*, the truth of the reports conveyed to Tinz was immaterial as long as he reasonably believed the reports. In addition, viewing the facts in the light most favorable to Martin and assuming that Peters did not ask her to speak to Twomey, this still would not justify Martin's actions. Martin was not being disciplined because she ignored a subordinate's request that she speak to Twomey. Rather, the purported concern with Martin's actions was that she should have taken it upon herself to speak to Twomey once she heard about

7

Twomey's complaint. Twomey had previously called the Department of Health to complain, and part of Martin's job as a supervisor was to deal with family members. Therefore, this discrepancy does nothing to undermine the Twomey incident as a legitimate basis for Martin's termination.

Fourth, Martin points out that she had "above average" performance reviews prior to her accusation to Tinz that he was a racist, after which she was only rated as "average." However, HCR did not assert Martin's September review as a reason for her termination, but relied on the two incidents that occurred in October and November. Her September review is, therefore, not even relevant to our pretext analysis. *Cf. Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1422 (3d Cir. 1992) (reversing summary judgment on ADEA where plaintiff's negative review, *which formed the basis for his discharge*, was given shortly after he refused to take early retirement and could be found pretextual).

Fifth, Martin points to HCR's alleged failure to progressively discipline her for the Marchewka and Twomey incidents as evidence of pretext. Since Martin was previously demoted, she was progressively disciplined. In addition, an employer's decision that an incident is serious enough to warrant termination rather than a less severe punishment does not show that the reason for termination is pretextual. *Cf. Fuentes*, 32 F.3d at 765 (an imprudent decision does not show pretext).

Finally, Martin points to testimony by Peters and Russo that she was a nice, cordial person, and that the incidents alleged are not consistent with her typical conduct and

8

demeanor. Assuming *arguendo* this testimony would be admissible, co-workers' opinions that Martin would not have rebuffed Marchewka and Twomey intentionally cannot show that Tinz and the other decision-makers were lying when they said that they thought she mishandled those incidents. *See Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 235 (4th Cir. 1991) (co-worker's opinions that plaintiff did not deserve a negative rating or to be discharged could not establish that negative rating was pretextual where rating was not wildly out of line with other indicia of the plaintiff's performance). Moreover, as discussed *supra*, even if Russo were a decision-maker who thought well of Martin, "the fact that the relevant decision-makers disagree about the plaintiff's qualifications does not evidence discrimination." *Fuentes*, 32 F.3d at 767.

## VI. CONCLUSION

The District Court's grant of summary judgment should be affirmed.

_____

/s/ D. Brooks Smith
Circuit Judge